# Pier *versus* Siegel and Wife.

A married woman, having no separate estate, who purchases land and pays for it with money borrowed by her in good faith from a third party, to secure which she and her husband, subsequently to the conveyance to her, join in giving to the lender a bond and mortgage of the property so purchased, cannot retain said property as against creditors of her husband whose debts were incurred prior to such transaction.

October 31st, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas No. 1 of *Allegheny county:* Of October and November Term, 1884, No. 109.

Ejectment, by Rufus W. Pier and Henry F. Dannals against Frank Siegel and Catharine Siegel, his wife, for a house and lot of ground situate on Fourteenth street in the city of Pittsburgh. Plea, not guilty.

On the trial, before COLLIER, J., the plaintiffs showed title as purchasers of the premises in question at a sheriff's sale, in 1883, under a judgment recovered by plaintiffs against

[Pier *v.* Siegel.]

Frank Siegel June 14th, 1881, under which said premises were levied upon in execution and sold as the property of said Frank Siegel.

The defendants claimed that Frank Siegel had no title to said property but that the same was the separate estate of Mrs. Catharine Siegel, purchased and paid for by her with money not derived from her husband.

The facts concerning Mrs. Siegel's purchase were proved as follows: In March and April, 1881, Mrs. Siegel had no separate estate of her own, and was not a feme sole trader. Frank Siegel, her husband, was indebted to the plaintiffs, and was insolvent. His property was sold at sheriff's sale under executions prior to April 1st, 1881, and he and his family were about to be dispossessed of their residence, and could find no place to live in. A certain Mrs. Gearhardt, who was a friend of Mrs. Siegel, in order to help her in her need, loaned her the sum of $3,500 with which to buy the premises in question, to reside in. The circumstances of this transaction were testified to by Mrs. Gearhardt, a witness called by defendants, as follows:

Q. Did you talk to Mrs. Siegel anything about buying that property on Fourteenth street, and if so, what?

A. Yes, I come there and she was crying and I told her for what you cry; and she told me she went and looked for a house and she can't find a place, she have so many children they won't rent her a house; well, and then I felt very sorry for her and I told her I saw a " to let" and "for sale " on Fourteenth street, for her to go there and she told me " I have no money;" well, I have a little bit of money I tell her and I will help you; well, I give her and she go to the bank [the owner of the property] and ask the bank what they want for this property and then she come back and she told me and she say she have no money; I say what you do with your family, you can't go on the street; you go and buy it; well she gone and got it and I give her a thousand dollars and the next July I give her the rest.

By the court.—How much altogether?

A. Thirty-five hundred dollars.

Q. It was your money, was it?  A. Yes, sir.  [The witness explained how she acquired the money.]

Q. And she said she couldn't pay it?

A. Yes, sir; she said she couldn't pay me, and I said don't worry about that; if you ever sell it you can pay me back.

Cross examination.  Q. This money that you let Mrs. Siegel have at that time, you took a mortgage for it, did you not?  A. Yes, sir.

Q. She owes you yet this sum of thirty-five hundred dollars?

[Pier *v.* Siegel.]

A. Yes, sir.

Q. When you say you gave her the money you mean you loaned it to her; she borrowed it from you, did she not?

A. Oh, surely. She gave me every year the interest when she can. She can't do anything now; I have no money from her but just one year's interest.

Q. You knew at the time that she was a married woman— at the time you loaned this money?

A. Oh, yes; she have had fourteen children.

Mrs. Siegel testified that her husband did not want to consent to the arrangement, as they could never pay back the money, but Mrs. Siegel took the money from Mrs. Gearhardt and paid it in consideration of the premises in question, for which a deed in fee simple was duly executed to "Mrs. Catharine Siegel," dated April 1st, 1881, and duly recorded. The Siegels then moved into the house.

It was stated as a fact, in the argument, and not denied, that Mrs. Gearhardt subsequently received a bond and mortgage on the premises in question, executed by both Mrs. Siegel and her husband, but there was no evidence on the subject other than the above statement by Mrs. Gearhardt, in cross examination that she "took a mortgage for it." It was also stated in argument "that Mr. Siegel could not read or write, and added his signature to the papers pro forma only, blindly obeying the instructions of the attorney for the grantor."

The plaintiff submitted the following point:

"That under all the evidence in the case the verdict must be for the plaintiffs."

Answer. "Refused." Exception.

The defendants submitted the following point:

"That under all the evidence the verdict should be for the defendants."

Answer. "Affirmed, if the transaction was in good faith." Exception.

The court charged the jury, inter alia, as follows:

It is well settled that a married woman cannot buy property on credit. A married woman, having no separate estate of her own, cannot go to a person and contract to buy a house. That contract would amount to nothing. If there was anything deeded the title would be in the husband. This case is a step further in advance of that; this is a case where the wife gets the money—borrows the money, if you chose to call it so— from an old friend. . . . . . It was owned by the bank, a third person; she borrows the money, a friend agrees to let her have it, and she buys the property. The money is loaned

[Pier v. Siegel.]

and she pays the cash, gets the deed and has her little home. The husband is in debt, and of course creditors have rights as well as anybody else. They levy on this property and claim it as his, and there is the question in this case; and it does look, carrying out the principle to its fullest extent, that the plaintiffs' theory would be the correct one.

In the first place the property is owned by a third person, not by the husband, and the consequence is it is another step beyond any case we have yet decided. The only fact for you to decide is this: Was this done in good faith? Because, no matter how the money was gotten, if she and her husband had an understanding that they were to do this, get the money, put it in the property, and then he would give his bond with her, it would not be worth anything. The law would not permit that transaction at all. If that was done in that way you ought to have no hesitation as to your verdict. [But I think this would be the law: That if this lady borrowed the money in good faith, although she borrowed it, it would be buying it from a third person without the husband having anything to do with it—no arrangement about it in any way—in that case I think she could hold the property.] That view differs from the view of the learned counsel; but, as I say, I believe that to be the law, and so instruct you in this case.

Verdict and judgment for the defendants. The plaintiffs took this writ of error, assigning for error the answers to the above points, and the portion of the charge above included within brackets.

*William S. Pier*, for the plaintiffs in error.—It is settled that a married woman, having no separate estate cannot, as against her husband's creditors, acquire real estate by purchase upon her individual credit, but property so purchased by her will be regarded as her husband's and subject to execution by his judgment creditors. Even if she have a separate estate, she cannot hold land purchased on credit, as against her husband's creditors, unless she proves affirmatively that the same was purchased distinctly upon the credit of such separate estate: Bucher *v.* Ream, 18 P. F. S. 421; Lochman *v.* Brobst, 6 Out. 481; Leinbach *v.* Templin, 9 Out. 522. The above doctrine is applicable to this case; there is no difference in principle between the case where a married woman purchases land upon her personal credit, and where she borrows the money from a third person upon her personal credit with which to pay for land purchased by her. In either case her bond given to secure the debt is void, but if executed also by the husband it is binding upon him: Schlosser's Appeal, 8 P.

F. S. 493 ; Quinn's Appeal, 5 Norris 447.   Mrs. Siegel, then, having no separate estate when this land was conveyed to her, the obligee in the bond is restricted in his remedy to Frank Siegel, the husband.   His personal liability is the only obligation given to the lender of the $3,500 which purchased this land.   It was his credit and the security of this land accompanying it which procured the means that purchased it ; not the wife's, for she had no separate estate, could make no contract, and therefore had no credit.   This land, then, came to the wife through the husband's means, his bond and covenants ; and at the time of its conveyance to her he was indebted to these plaintiffs in the debt upon which they recovered the judgment under which the land was sold to them, and it was liable to satisfy their judgment.   Under the undisputed evidence in the case we submit that there was no question for the jury, and the court should have affirmed our point.

*Burleigh* (with him *Geo. N. Monro* and *Harbison*), for the defendants in error.—We admit, of course, that where the wife claims property, real or personal, as against her husband's creditors she must show affirmatively that she acquired it independently of her husband—" that she paid for it with funds which were not furnished by the husband :" Gamber *v.* Gamber, 6 Harris 366, and subsequent cases.   But we assert that this case fulfils that condition.   It was not a purchase upon credit, for the vendor was paid in full, in cash, by the wife, who acquired the money independently of her husband.   The plaintiffs say—true, but she *borrowed* the money from Mrs. Gearhardt with which to pay the vendor, and as she could not bind herself by such contract to repay, the loan was made on her husband's credit and the equitable title to the land became his.   We answer, that it is immaterial to this issue whether Mrs. Gearhardt made a gift or a loan of the money to Mrs. Siegel.   Mrs. Gearhardt is not here complaining, or seeking to enforce any contract either as against Mrs. Siegel or her husband or his creditors.   Mrs. Gearhardt testified that when she offered the money to Mrs. Siegel and the latter said she could not pay her back, Mrs. Gearhardt replied : " Don't worry about that ; if you ever sell it you can pay me back."   That was the only stipulation at the time of the transaction.   Mrs. Siegel testified that her husband " didn't want to consent to it at all."   At the time of the loan nothing was said by any one about credit or security ; the fact that a bond and mortgage was afterwards given by Mrs. Siegel, in which her husband joined for conformity, can have no effect upon the original transaction, which the jury has found was

[Pier v. Siegel.]

bona fide. A married woman can mortgage her separate real estate, her husband joining, without rendering it liable to his creditors: Brown v. Pendleton, 10 P. F. S. 419; Glass v. Warwick, 4 Wr. 140; Ramborger v. Ingraham, 2 Wr. 146; Patterson v. Robinson, 1 Casey 81. The fact is patent that Mrs. Siegel acquired the money independently of her husband or his credit; when in her hands it was her separate estate, and it is immaterial how she acquired it, otherwise than from her husband. She has shifted the burden of proof and rebutted the presumption that the money was her husband's, and beyond that his creditors have no right to pry.

Mr. Justice PAXSON delivered the opinion of the court, January 5th, 1885.

The question of the good faith of this transaction has been settled by the verdict of the jury. We have only to consider its legal aspect.

The facts are not disputed. Catherine Siegel, one of the defendants below, is a married woman; has never been a feme sole trader, and has not any separate estate. She bought the house and lot which is the subject of this controversy; took the deed in her own name, and paid for it wholly with money borrowed from a friend. Subsequently she joined with Frank Siegel, her husband, in giving a bond and mortgage upon the house for the borrowed money. The property was then levied on upon an execution issued upon a judgment recovered against her husband, and the right, title and interest of the latter sold by the sheriff to the plaintiffs below, who brought this action of ejectment to recover the possession. The question for our consideration is whether the title thus acquired by Mrs. Siegel is good against her husband's creditors.

As a general rule, where husband and wife are in the joint possession or occupancy of personal or real estate, the law presumes the property to belong to the husband, and this presumption continues until the wife shows that she acquired it by means not derived from her husband, and the burden of proof is upon her to prove that she so acquired it. The decisions in this state upon this point are uniform: Gamber v. Gamber, 6 Harris 363; Keeney v. Good, 9 Id. 349; Topley v. Topley, 7 Casey 328; Auble v. Mason, 11 Casey 261; Hallowell v. Horter, Id. 375; Walker v. Reamy, 12 Id. 410; Winter v. Walter, 1 Wright 155; Rhoads v. Gordon, 2 Id. 277; Robinson v. Wallace, 3 Id. 129; Aurand v. Schaffer, 7 Id. 363; Gault v. Saffin, 8 Id. 307; Baringer v. Stiver, 13 Id. 129; Hoffman v. Toner, Id. 231; Flick v. Devries, 14 Id. 266; Curry v. Bott, 3 P. F. S. 400; Seeds v. Kahler, 26 Id. 262; Sixbee v. Bowen, 10 Norris 149. The disability of a married woman

Pier *v.* Siegel.]

to contract is a rule of the common law so familiar that a reference to it seems almost unnecessary; and the Act of 1848 and its supplements did not, and were not intended to change the law in this respect except to bind her separate estate in special cases and in the manner therein specified. This is settled by abundant authority. It is sufficient to refer to Caldwell *v.* Walters, 6 Harris 79; Glyde *v.* Keister, 8 Casey 85; Keiper *v.* Helfricker, 6 Wr. 325; Steinman *v.* Ewing, 7 Id. 63; Schlosser's Appeal, 8 P. F. S. 493; Quinn's Appeal, 5 Norris 447. It is also a rule too firmly established in this state to be shaken, that a married woman cannot buy either real or personal estate upon credit, unless she is the owner of a separate estate, in which case she contracts upon the credit of such estate: Robinson *v.* Wallace, 3 Wright 129; Wieman *v.* Anderson, 6 Id. 311; Baringer *v.* Stiver, 13 Id. 129; Hoffman *v.* Toner, Id. 231; Rush *v.* Vought, 5 P. F. S. 437; Brown *v.* Pendleton, 10 P. F. S. 421; Seeds *v.* Kahler, 26 Id. 262. It was said in Bucher *v.* Ream, 18 P. F. S. at page 426, "If she (a married woman) purchases property with borrowed money or on credit, it belongs to her husband as it respects his creditors, and is liable for his debts." The same doctrine was re-asserted in the recent case of Lochman *v.* Brobst, 6 Out. 481, and many of the authorities are there referred to.

It remains to apply these well settled principles to the case in hand. If Mrs. Siegel had given the bond and mortgage of herself and her husband to the vendor for the purchase money, it is too plain for argument, under the authorities that the equitable title would have been in her husband, and liable for his debts. Does it make any difference that she paid the vendor the purchase money by means of a loan obtained from a friend? We think not. It was still a credit. Upon whose credit? Not upon her credit, certainly, for she had no personal credit; the law permits her none, and she had no separate estate upon the credit of which she could contract. The purchase was upon the credit of her husband; he gave his bond for the whole of the money, and upon a judgment recovered upon that bond his other property, if he has any, may be swept away and applied in payment for the real estate in controversy. In such case what would be the remedy of the creditors if we allowed the title of the wife to stand? It requires but a moment's reflection to see that were we to sanction the doctrine contended for by the defendants in error, we would open the door to the most serious frauds. It would enable married women whose husbands are embarrassed, to buy upon credit, give the obligations of their husbands for

[Hutchinson v. Woodwell.]

the purchase money, and apply his property through the machinery of the law in payment.

We are of opinion that the plaintiff's first point should have been affirmed, and a binding direction given to the jury to find for the plaintiffs.

The judgment is reversed and a venire facias de novo awarded.

STERRETT, J., dissented.