## ESTATE OF JOSEPH J. KARCH, DECEASED.

### APPEAL BY S. WEISS, GUARDIAN, FROM THE ORPHANS' COURT OF LEBANON COUNTY.

Argued February 21, 1890—Decided March 3, 1890.

1. When a sum of money is found in a decedent's house, at the time of his death, evidence that his wife had borrowed the same amount from her sister and given her note therefor, is sufficient to rebut the presumption that the money belonged to the decedent's estate.
(a) A decedent was indebted to his wife and also to her sister. He had two policies of insurance on his life, one in favor of his wife, and one in his own name in favor of his estate. At the audit of his estate, it was shown that he had stated he had insured his life to secure his wife and her sister:
2. In such case, the decedent's declaration was insufficient to establish that the policy for his wife's benefit was intended as a security for his debt to her, rather than as a provision for her after his death; and the declaration may have referred to the policy in favor of his estate.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-LIAMS and MITCHELL, JJ.

No. 251 January Term 1890, Sup. Ct.; court below, number and term not given.

Exceptions having been filed in the court below to the final account of Amelia S. Karch, administratrix of the estate of Joseph J. Karch, deceased, *Mr. A. W. Ehrgood* was appointed auditor to hear and determine, etc. The exceptions were not printed in the paper-books, but it appeared that one of them was to the omission of the accountant to charge herself with the sum of $2,200, cash on hands at the time of the decedent's death.

After hearing the testimony, the auditor upon the matters in controversy reported as follows:

In passing upon the exceptions, your auditor will consider them in their order, omitting the first, which is involved in the other.

The second exception, then, brings us to the main contention

Auditor's Report.

in the case. It is alleged by the exceptant that at the time of the death of Joseph J. Karch, there was in his house a large sum of money, amounting to $2,200, which belonged to the decedent, and with which the accountant should be surcharged. On the other hand, it is contended on behalf of the accountant, that the said sum of money, although in the house of the decedent at the time of his death, was not his money, but the money of the accountant. Nearly all the testimony taken in this case was taken to sustain one or the other of these positions. It is an undisputed fact that the sum of $2,200 was in the house in which he died at the time of his death, and the question is, to whom did it belong, to the decedent or his wife, the accountant?

To sustain the position of the accountant, she produces a note dated at Lebanon, April 6, 1886, payable one year after date to the order of Celia Kline, for the sum of $2,200, and signed by Amelia S. Karch. The accountant was also called as a witness in her own behalf, and was a competent witness only as to what occurred subsequent to her husband's death; but, on cross-examination by one of the counsel for the exceptant, she was asked the direct questions, where and when she got the money, meaning the $2,200, and she answered, from her sister, on April 6, 1886; and your auditor is of the opinion that the counsel for exceptant, having asked the questions, and the witness not having been examined in chief as to where or when she got the money, is not in a position to object to her answers after they are given, when he finds them against his client's interest, and makes her a competent witness to explain, as she does, how she came to have the $2,200 in dispute. Celia Kline, the sister of the accountant, was also called as a witness and testified that she had loaned her sister $2,200 on April 6, 1886, and attempts to explain where *she* got the money. This witness testified that this money came from her father's estate, and that she had loaned it to one William M. Kauffman, and that she got the $2,200 from Mr. Kauffman, in March, 1886.

—The auditor then considered the testimony before him, at length, and concluded:

The charge made against the accountant and her sister is a very serious one and ought not to be made without clear evidence to sustain it. After a long and careful examination and

Opinion of Court below.

consideration of all the testimony taken, which has any bearing on the question, your auditor is of the opinion that the evidence is not sufficient to warrant him in finding that the money in dispute is money belonging to the estate of Joseph J. Karch, deceased, and he must therefore decline to surcharge the accountant with the said sum of $2,200. There is certainly not sufficient testimony to justify your auditor to impute such a serious crime to these two persons, as would be the inevitable result in surcharging the accountant with the money in dispute. The second exception is therefore dismissed.

To the foregoing report, S. Weiss, guardian of Rebecca Karch, only daughter of the decedent, filed exceptions alleging that the auditor erred:

1. In not sustaining the second exception, and not surcharging the accountant with the $2,200 therein mentioned, with interest from the time she appropriated the same to her use.

2. In not sustaining the fifth exception, because the witness who testified that the decedent stated in her presence that he got $800 from his wife, also swore that he declared at the same time that he had insured his life to secure the money due his wife and her sister. This point was made and discussed when the case was argued, although the auditor did not notice it in his report. The accountant received $2,000, on a life insurance policy on the life of her husband, which she must apply to the payment of her claim, and she has therefore nothing more to get out of the estate.

Said exceptions having been overruled by the auditor, they were filed with his report. On the argument thereof before the court, the following opinion was filed, McPherson, J.:

On the principal question, viz.: whether the accountant should be surcharged with $2,200, we entirely agree with the auditor's conclusion. The testimony is conflicting, but the weight of the evidence sustains his finding. We may add, that the elaborateness of the alleged scheme is, under the circumstances, an argument against it of considerable weight. And further; if the accountant's purpose was to fraudulently convert to her own use money belonging to the estate, it is not easy to understand why she should voluntarily share the illegal

gain with her sister, nor why she should call in Mr. Gosler and acquaint him with the fact that she had in her hands this considerable sum, thus unnecessarily making him a witness to an important fact and rendering concealment impossible.

The exceptant's theory goes very far indeed; it requires us to suppose that these two sisters, one of them at least an ignorant woman, entered into an ingenious conspiracy to defraud the estate, and carried it out by acts equivalent to theft; that they executed a false paper, in pursuance of this scheme, and are now supporting it by wilful perjury. So far as the accountant is concerned, the only visible motive for this alleged criminal conduct would seem to be a gain of about $400; for the intestate laws would have given her a third of this $2,200, without crime, and she could hardly expect more than half, or $1,100, if the scheme succeeded. It is not surprising, therefore, that the auditor declined to take this view, especially in the face of so much opposing testimony. No doubt the burden of proof was on the accountant to show that this money did not belong to the estate, but we think she has overcome the presumption by a considerable preponderance of evidence.

As to the other matter, the decedent's debt to his wife was clearly proved. Considering this relationship, the fact that his life was insured in her favor raised no presumption that the policy was a security for her debt. The burden of showing this was upon the exceptant, and was met simply by proving a declaration of the decedent that "he loaned $1,000 from his wife's sister and $800 from his wife. He said he had insured his life to secure them for their money." Assuming this declaration to be competent, we find from the testimony that the fact is as he stated, altogether aside from the policy in question; for the decedent had two policies, and by one of them he had insured his life for $2,000 in favor of his estate, and this money has been collected and is accounted for. His declaration naturally and fully applies to this policy, and we see no reason to limit it to the policy which is in the wife's name alone, and which therefore was presumably for her sole benefit, rather than, in accordance with its natural meaning, to the policy for the benefit of his estate, which would of course go to secure not only his wife, but his wife's sister and all his other creditors. The exceptant's evidence upon this point is too slight; he did

not even compel the production of the policy about which he complains, or the application upon which it was based, although if the insurance was really taken out as security for his wife's debt, this fact might be expected to appear upon one paper or the other. In the absence of sufficient opposing evidence, the ordinary presumption must prevail, that a policy taken out by a husband in favor of his wife is intended as a provision for her after his death, and not as a security for a debt.

The third and sixth exceptions were not argued.

The exceptions are overruled, the report is confirmed and a decree is ordered to be entered in accordance therewith.

—Thereupon the exceptant took this appeal, specifying the dismissal of his exceptions and the confirmation of the report of the auditor for error.

*Mr. Josiah Funck* (with him *Mr. P. Simon Keiser*), for the appellant.

Counsel cited: Frick v. Barbour, 64 Pa. 120; Fowler v. Sergeant, 1 Gr. 355; Somerset Co. M. F. Ins. Co. v. Usaw, 112 Pa. 80; Milligan's App., 97 Pa. 525; Hindman's App., 85 Pa. 466; Balt. etc. R. Co. v. Sloan, 131 Pa. 568.

*Mr. J. P. S. Gobin* and *Mr. Lee L. Grumbine*, for the appellee, were not heard.

Upon the conclusiveness of the auditor's findings of fact, the brief filed cited: Burroughs's App., 26 Pa. 264; Mengas' App., 19 Pa. 222; Bull's App., 24 Pa. 288; Roddy's App., 99 Pa. 12; Yohe's App., 55 Pa. 122; Whiteside's App., 23 Pa. 116; Dellinger's App., 71 Pa. 428.

PER CURIAM:

The findings of the auditor, confirmed by the learned court below, settle the questions of fact in this case, and, as the record does not present any question of law, there is nothing for us to discuss. The opinion of the learned judge is full and satisfactory.

Decree affirmed, and the appeal dismissed, at the costs of the appellant.