STATE *v*. JOHN KAMUDA.

October Term, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 6, 1925.

*Jury—Challenge to Array—Right to Assert Constitutional Invalidity of Statute—Question Held Not to Call for Conclusion of Witness—Evidence Justifying Inference of Ownership of Store—Weight of Inferences from Evidence—Presumptions Relating to Ownership of Personalty—Individual Possession—Joint Possession—Assertion Part of Res Gestae —Possession, Ownership, and Agency for Jury Under Evidence—Admissibility of Evidence Showing Where Respondent's Wife Got Liquor Sold by Her in Husband's Store— —Evidence of Other Sales to Characterize Respondent's Place of Business and Show Agency of Wife—Evidence of Search and Seizure and Results to Show Agency—Sufficiency of Evidence to Show Wife's Agency—Relation of Husband and Wife as Making More Probable Husband's Knowledge and Authority Concerning Unlawful Sale of Intoxicating Liquor—Insufficient Exception to Court's Failure to Charge.*

1. Challenge to array cannot be made, as matter of right, after challenges to the polls.

2. Where terms of statute were closely followed in impanelling jury, and, after examination of jurors before they were sworn, jury was satisfactory to both parties, respondent was not prejudiced by interpretation of statute requiring him to exercise peremptory challenge or accept jurors as drawn except for cause, without having first had opportunity to examine them, and, his rights not being affected thereby, he cannot avail himself of asserted invalidity of statute, so interpreted, as denying right given under Constitution, Ch. I, Art. 10, and Ch. II, § 30.

3. In prosecution for selling intoxicating liquor, question asked witness for State as to who was "running the business" when he was in store in which such liquor was said to have been sold, store being claimed by State to be owned in common by respondent and wife, *held* not objectionable as conclusion, in view of meaning of "run," which is: "To conduct; manage; carry on; as to run a factory, a hotel, or a business"; hence a person may conduct, or manage business owned wholly by himself, or partially or wholly by somebody else, and witness could properly state fact that when at store respondent, his wife not being there, was engaged in selling and delivering goods to customers, and characterize it as "running the business."

4. In prosecution for selling intoxicating liquor, evidence that respondent was "running the business" or "running the store" in which liquor was sold when certain witnesses were in store, *held* to justify inference that respondent was owner.

5. Fair inferences from evidence founded upon the natural course of business and of human experience are as much evidence as the principal facts from which deductions flow.

6. Possession alone of personal property is presumptive evidence of ownership, and with nothing to oppose it is sufficient, and when accompanied by complete acts of ownership for a considerable time, as possessor's using or selling it as his own, is strong evidence for consideration of jury, and necessitates satisfactory explanation.

7. Where two or more persons are in apparent possession of personal property, presumption of ownership is in favor of him whose individual acts of control and dominion preponderate.

8. Where joint possession of personal property is that of husband

and wife, presumption of ownership is in favor of husband.

9. Where respondent, when arrangements were being made regarding bail, in response to question as to his financial condition, asserted that he owned store wherein sales of intoxicating liquor were alleged to have been made, such assertion was admissible as part of the *res gestae* and tending to explain or characterize his possession.

10. In prosecution for selling intoxicating liquor, questions of respondent's possession and ownership of store where intoxicating liquor was claimed by State to have been sold, of his wife's agency when in charge of store during his absence, and when selling goods therein, including unlawful sale of intoxicating liquor, *held* on the evidence for jury.

11. In such prosecution, testimony of witness that respondent's wife got liquor for witness from back room connected with respondent's store and used as storeroom for supplies for store, was admissible as tending to show that liquor sold was kept in such storeroom with and as part of goods for sale in store, in business there owned and carried on by respondent.

12. In such prosecution, evidence of other sales by respondent's wife than one complained of, made in respondent's store, one being when respondent was present, *held* to characterize respondent's place of business, and to be admissible on question of wife's agency when making sale charged in complaint.

13. In such prosecution, evidence of search and seizure made by officers four days after time offense charged was committed, and of what they found, and where, including can of alcohol then seized by them, *held* admissible on question of agency of respondent's wife for him.

14. In such prosecution, evidence *held* to justify inference that respondent's wife, in making sale of intoxicating liquor, was acting as his agent, thereby making him liable for her criminal act, in making such sale.

15. Sales of intoxicating liquor by respondent's wife in his store would more readily be supposed to have been with his knowledge and authority than would those of a stranger.

16. Exception to court's failure to charge, not specifying any particular point or points on which court failed to charge, will not be considered on review in Supreme Court.

INFORMATION for unlawful sale of intoxicating liquor. Plea,

not guilty. Trial by jury in Rutland city court, *Leo E. Pratt,* acting City Judge. Verdict of guilty and judgment thereon. The respondent excepted. The opinion states the case. *No error.*

*Dorsey & Kinney* for the respondent.

*Charles E. Novak,* State's attorney, for the State.

WATSON, C. J.   In this case the respondent was charged with selling intoxicating liquor to one Leon Pelkey at the village of Florence in the town of Pittsford, this State, on August 25, 1923, contrary to law.   A trial was had by jury in the Rutland city court, resulting in a verdict and judgment of guilty, to which respondent excepted.   The jury was drawn on October 2, 1923, six days before the trial.   The officer appointed by the court wrote the names of twenty-four persons, selected by him from the jury list, from the towns as directed by the court, on separate slips of paper and placed such slips in a proper receptacle.   The respondent objected to the manner of drawing the jury, for that when the names were drawn from the box, he either had to exercise a peremptory challenge as to any man drawn or accept him; that he could not exercise such right of challenge intelligently without first having an opportunity to examine any proposed juror; and he objected to being required to exercise such right without having had an opportunity to examine the jurors as drawn, claiming that such right of examination was given by Article 10 of Chapter I, and by Section 30 of Chapter II, of the Constitution.   The position of the respondent in this respect was overruled, to which he excepted.   The court then remarked to respondent's counsel: "When the jury is drawn you will have an opportunity to examine * * *."   The provisions of section 30 pertain, in terms, exclusively to jury trials in the Supreme and county courts, and have no reference to trials in city or municipal courts.   By Article 10, in all prosecutions for criminal offenses a person is entitled to a speedy public trial "by an impartial jury of the county."   In this connection it is important to note that a municipal or city court has jurisdiction, throughout the county wherein it is located, to try and finally determine prosecutions for misdemeanors of the character here in question, committed within the county, with no

right of appeal from its judgment. G. L. 2565; *State* v. *John,* 90 Vt. 150, 96 Atl. 699. And in prosecutions within the jurisdiction of such court to try and finally determine, the respondent is entitled to a trial by jury of twelve persons, the provisions relating to a jury in such court in civil causes being made to apply. In such prosecutions both the State and the respondent may have six peremptory challenges, and any further number for cause. G. L. 2569.

At the time of drawing the jury, ten drawn were satisfactory to both parties and were accepted as jurors in the case. Six as drawn were peremptorily challenged by the respondent; and three were challenged in like manner by the State. The panel was made complete by the acceptance of the next two men drawn, without objection by either party.

[1] The transcript, which is made controlling, shows that on the day of the trial and before the jurors were sworn, ''The jury, having been examined and both sides satisfied,'' the respondent, by his motion then filed, challenged the array and moved to quash the venire under which the jurors of the panel had been summoned, assigning several grounds, which motion was overruled and exception noted. Suffice it that no challenge to the array had before been taken by the respondent, and such a challenge could not be exercised by him, as matter of right, after his several challenges to the polls. *Vermont Box Co.* v. *Hanks,* 92 Vt. 92, 102 Atl. 91.

[2] The respondent made no claim that by the ruling of the court the mode of procedure, pointed out by the governing statute, was not required to be followed in point of time for making peremptory challenges. His contention was, in effect, that the statute in this respect was in violation of a right, given him by the Constitution, to examine each juror as drawn, before taking such challenge. But since it appears that the terms of the statute were closely followed in the impanelling of the jury, and since it further appears that finally, on examination of the jurors before they were sworn, the jury was satisfactory to both parties, it cannot be said that the respondent was prejudiced by the interpretation given to the statute in this regard, and the proceedings will not be revised. *Quinn* v. *Halbert,* 57 Vt. 178; *State* v. *Ward,* 60 Vt. 142, 14 Atl. 187; *State* v. *Bosworth,* 86 Vt. 71, 83 Atl. 657; *State* v. *Pilver,* 91 Vt. 310, 100 Atl. 674. And it not appearing that the respondent's rights were affected

by the statute as interpreted, he cannot avail himself of its
asserted invalidity, if it exists. *State* v. *Haskell*, 84 Vt. 429,
79 Atl. 852, 34 L. R. A. (N. S.) 286; *State* v. *Paige*, 78 Vt. 286,
62 Atl. 1017, 6 Ann. Cas. 725; *State* v. *Barr*, 78 Vt. 97, 62 Atl.
43; *State* v. *Scampini*, 77 Vt. 92, 59 Atl. 201.

It appeared that the manual act of selling and delivering
the intoxicating liquor to Pelkey on August 25, 1923, charged
in the complaint, was done by Mrs. Kamuda, the respondent's
wife, in the grocery store and home premises occupied by the
Kamudas and their family, at Florence in Rutland County.
They were married in 1915, and at the time of the trial had
seven children, the oldest being seven and a half years old, and
the youngest, seven months. The State claimed that in making
said sale of liquor Mrs. Kamuda was the agent of the respondent.
The respondent denied her agency in this respect. He did not
testify, and his wife was the only witness called by him in de-
fense. The existence of such agency was a vital question in the
State's case. The evidence on the part of the prosecution tended
to show that the real estate, including the store building in which
the unlawful sale was made, was owned by the respondent and his
wife as tenants in common or otherwise, the front part of the
building being used as a grocery store, and the part in the rear
of the store and connected therewith being occupied by the re-
spondent and his family as their home; but that the store busi-
ness was owned and carried on by the respondent alone. The
testimony of Mrs. Kamuda was to the effect that she was the
sole owner of the store, and of the real estate including the build-
ing in which the store was kept, having purchased the same
from a sister of the respondent, who purchased the property
from the respondent eight or nine years before. Mrs. Kamuda
further testified that she owned the store business and the pro-
ceeds thereof as her separate property, and that her husband
was employed by her in that business but received no pay for his
services connected therewith; that he did all the buying of
groceries for sale in the store, paying therefor by checks, signed
by him in her name, delivered the orders and sold goods in the
store when there; that he does the work for her in the grocery
business, delivers orders in Florence and Proctor, where he goes
"day after day"; that he took care of the grocery business, but
did not have anything to do with the liquor or alcohol purchased
by her; that she sold a pint of liquor to Pelkey on August 25,

1923, but her husband was in Rutland that day and had no knowledge of the sale; that the money received for intoxicating liquor sold by her she kept separate and apart from the money taken in the sale of groceries.

As will be seen, the tendency of the State's evidence was materially different. Leonard F. Wing, the judge of the Rutland city court, testified that this case came before him some time earlier when arrangements were being made regarding bail being furnished for the respondent, at which time the latter made some statement relating to the ownership of the store in Florence. On being asked what the respondent said, the witness answered: "He said he owned the store I think. Either the store or the place, I don't remember which. I think he said he owned the store. That was in response to a question as to his financial capacity." On being asked in cross-examination if this property was not where the respondent and his wife resided, answered that he did not know, but thought it was. The witness further said in redirect examination, that in looking up the records he found that the respondent owned an undivided half interest in some real estate in Proctor situated over in Florence. Being then asked if that was where the store premises were located, answered, "There is a store there, yes."

[3, 5] The further tendency of the State's evidence was that at times the respondent went out from the store taking orders for and delivering goods sold in the business; that when he was absent for such purpose or otherwise his wife was in the store, selling goods to customers. Ernest Sjblim of Proctor, who had been a quarry foreman for some thirty years, and recently appointed a deputy sheriff, testified to having been in the Kamuda store several times and "around there a whole lot." On being asked: "Q. If you have been in the store, when you have been there, who has been running the business?" answered (pointing to the respondent) "that man." This question was excepted to as calling for a conclusion. But there was no error in the ruling. One definition of the word *run*, says Webster's New Int. Dictionary, is "To conduct; manage; carry on; as to run a factory, a hotel, or a business." As thus defined, a person may conduct, or manage a grocery-store business owned wholly by himself, or partly or wholly by somebody else; and if the witness on the occasions to which he referred went into the store in question and saw the respondent—his wife not being there—

engaged in selling and delivering goods to customers, he could properly state that fact and characterize it as "running the business." The inferences which may properly be drawn therefrom constitute a different thing and are discussed below. This seems to have been the view taken by the court below; for when the witness was previously asked who the proprietor of the store was, the question was excluded on the ground that it called for a conclusion, the court saying "Let him state the facts." Thereupon the question under consideration was permitted, notwithstanding the same objection was made. Henry Soderberg, one of the State's witnesses, testified without objection that he had been a constable in the town of Proctor for twenty-one years, and had been in the Kamuda store in Florence several times when both the respondent and his wife were at home; that on those occasions the wife was in the kitchen doing the work, and the respondent was "running the store," "selling his goods." The witness Pelkey testified without objection that the respondent's business was "Running a grocery store." From the fact that the respondent was "running the business" or "running the store" on the several occasions when each of the two foregoing witnesses was in the store, the jury might fairly infer that he was the owner. "The fair inferences, from evidence founded upon the natural course of business and of human experience, are as much evidence as the principal facts from which the deductions flow." *Austin* v. *Bingham,* 31 Vt. 577.

[6-9] It is a general proposition that possession alone of personal property is presumptive evidence of ownership, and with nothing to oppose it is sufficient; and if the possession is accompanied with the exercise of complete acts of ownership for a considerable time, as the possessor's using or selling it as his own, it is strong evidence for the consideration of a jury, and necessitates satisfactory explanation. (*Moon* v. *Hawks,* 2 Aik. 390, 16 A. D. 725; *Bullard* v. *Billings,* 2 Vt. 309) ; and when two or more persons are in apparent possession, the presumption of ownership is in favor of him whose individual acts of control and dominion preponderate (22 C. J. 127; *Reid* v. *Butt,* 25 Ga. 28) ; and where the joint possession is that of husband and wife, the presumption of ownership is in favor of the husband. 2 C. J. 127; *Curran* v. *McGrath,* 67 Ill. App. 566; *Laing* v. *Day,* 8 Ill. App. 631; *McClain* v. *Abshire,* 63 Mo. App. 333; *Karch's Estate,* 133 Pa. 84, 19 Atl. 311; *Pier* v. *Siegel,* 107 Pa. 502.

See also *Scitz* v. *Mitchell,* 94 U. S. 580, 24 L. ed. 179. Such presumption in favor of the husband was aided by his declaration of ownership of the store, if such it was, made to the judge of the city court at the time the matter of his furnishing bail in this case was under consideration. If the jury found he then asserted that he owned the store, such assertion was part of the *res gestae* and tended to explain or characterize his possession. *Bullard* v. *Billings, supra; Avery* v. *Clemons,* 18 Conn. 306, 46 A. D. 323; *Abney* v. *Kingsland,* 10 Ala. 355, 44 A. D. 491. The doctrine is stated by Professor Wigmore as follows: "One in possession of property is presumed to be the owner of it. As making more definite and significant the nature of the person's custody or occupation, and as giving it the significance of an exclusive control and of a possession in the fullest sense, the acts and declarations of claim of title by the person may be decisive, and should therefore be considered for that purpose; without, however, conceding to them any force as hearsay assertions." 3 Wig. Ev. § 1779. The author calls attention to the fact that the courts are not altogether in harmony on the question, but that by the better opinion the doctrine is sound. Many decisions of the courts in different states are there noticed, and he refers to the two decisions cited above from this Court as sanctioning such use of declarations. In addition to those cases the same doctrine is expressly ruled in the more recent case of *State* v. *White,* 77 Vt. 241, 59 Atl. 829, 2 Ann. Cas. 302. We see no reason for departing from the holdings in such respect in our cases.

[10] From what we have said concerning the presumption of ownership of the store being in the respondent, consequent on his possession if established, and the effect of such presumption, there should seem to be no doubt that, as the case stood on the evidence bearing on the question of possession and of such ownership, and on the question of the wife's agency for the respondent, either express or implied, when in charge of the store during his absence therefrom, and when selling goods therein kept by him for sale in connection with the business there being carried on, either in his presence or absence, it was for the jury in each particular. The question whether the unlawful sale of the intoxicating liquor by her to Pelkey on the day named in the complaint was so within the scope of her agency as, in the cir-

cumstances, to make the respondent criminally liable, was also for the jury on the evidence.

[11] Regarding the sale charged in the complaint, Pelkey testified, among other things, that when Mrs. Kamuda got the liquor for him "She went in the back room. Q. How long was she gone? A. Just a few minutes. Q. Is there a house connected with the store? A. Yes. Q. When she went in the back room, in what room would she be? A. Kind of a storeroom they have there. Q. Did she go out of that room that you could see? A. I don't think so." In cross-examination the witness testified. "Q. You say this back room is a storeroom? A. Yes. Q. That's a store room for supplies of the store as you understand it? A. Yes."

This evidence was undisputed. It tended to show that the liquor then sold to Pelkey was kept in the storeroom by the respondent, with and as a part of the goods for sale in the store, in the business there owned and carried on by him.

[12] As bearing on the question of the wife's agency, evidence was received, subject to respondent's exception, showing three or four prior unlawful sales of intoxicating liquor by her to Pelkey in the same store within the three months preceding the sale in question, and also one such sale by her to George Klebo in the latter part of July or the fore part of August, the same year. Mrs. Kamuda testified in her direct examination that she sold one pint of alcohol to Pelkey on August 25, 1923, and sold some to him just a few other times; but she denied selling any liquor to Klebo on the occasion when he came into the store earlier in the summer. Her testimony was that he was drunk when he came in, and had a bottle with him; that she sold him only a cigar. Klebo testified that he bought half a pint of whiskey or alcohol at the respondent's store on that occasion and paid Mrs. Kamuda $1.25 therefor; that he paid her "money and the stuff was placed on the counter." He said, "I took the stuff off from the counter. I bought cigars at the same time. This was handed to me. I couldn't say who handed it to me." He further said Mrs. Kamuda was there and he thought Mr. Kamuda "was in the store at the same time." Thus the testimony of this witness tended to show not only that intoxicating liquor was then and there sold to him by Mrs. Kamuda in connection with other goods, namely, cigars, kept in the store for sale, and that the "stuff" he so purchased was handed to him over

the counter—it may be inferred in the common way of delivering to customers small goods sold to them in a grocery store—but also that the respondent was present, having knowledge of the sales and of the goods sold, and assenting to or approving such sale.

Further notice in detail of the evidence of other sales of intoxicating liquor by the wife at that store is unnecessary. That evidence tended to characterize the respondent's place of business, and so had a bearing on the question of her agency for him when she made the sale to Pelkey at the time charged in the complaint. There was no error in ruling it admissible. *State* v. *Barr,* 78 Vt. 97, 62 Atl. 43; *State* v. *Legendre,* 89 Vt. 526, 96 Atl. 9.

[13]  Nor was there any error in admitting evidence of the search and seizure made by the officers four days after the time when the offense charged was committed, and of what they found, and where, including as an exhibit the two-quart can of alcohol then seized by them. This evidence, for the same reason, had a like bearing on the question of the wife's agency. *State* v. *Krinski,* 78 Vt. 162, 62 Atl. 37; *State* v. *Mercier,* 98 Vt. 368, 127 Atl. 715; *State* v. *Neapolitano,* 97 Vt. 386, 123 Atl. 381; *State* v. *Legendre, supra.*

[14, 15]  From the facts and circumstances shown by the evidence in this case, including the relationship of husband and wife, it could fairly and reasonably be inferred that whenever the wife, in the course of the performance of the husband's store business, sold and delivered to customers goods kept by him for sale in the carrying on of such business, she was acting under an implied agency from him, and a jury might well find that she made such sales by his authority, assent, or approval; and if such a finding be had, the case being otherwise made out, the respondent was liable for her criminal act in making the unlawful sale charged in the complaint. *State* v. *Legendre, supra.* Such criminal acts of the wife would more readily be supposed to have been with the respondent's knowledge and authority than would those of a stranger. *Brown* v. *Woodward,* 75 Conn. 254, 53 Atl. 112.

[16]  Respondent excepted to the failure of the court to charge the jury "as to the effect of the crime being committed on premises solely owned by her (respondent's wife) and in a store conducted by her and in her own name. The store that

she was the proprietor of and that in all transactions she was the principal and not the agent.'' The ''effect'' to which reference is there made may relate to the crime itself, or to the wife's agency, or to the respondent's liability for her act in committing the crime. It is enough to say that the exception did not specify any particular point or points on which the court failed to charge, and so will not be considered. *Luce* v. *Hassam,* 76 Vt. 450, 58 Atl. 725.

This disposes, either directly or indirectly, of all the points made in respondent's brief.

*Judgment that there was no error in the procedings, and that the respondent take nothing by his exceptions. Let execution be done.*