**Loren E. DAMON, Jr., by his next friend, Vivian F. Damon, Appellant,**

**v.**

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Appellee.**

**No. 514, Docket 76–6145.**

United States Court of Appeals, Second Circuit.

Argued April 6, 1977.

Decided May 23, 1977.

Zander B. Rubin, Vermont Legal Aid, Inc., St. Johnsbury, Vermont, for appellant.

George Eng, Asst. Regional Atty., Dept. of H. E. W., Boston, Mass. (George W. F. Cook, U. S. Atty. D. V., Rutland, Vt., of counsel), for appellee.

Before OAKES, Circuit Judge, and WY-ZANSKI * and HOLDEN,** District Judges.

OAKES, Circuit Judge:

This appeal presents us with a close question based on unusual facts in the context of a unique admixture of federal and Vermont law. The United States District Court for the District of Vermont, Albert W. Coffrin, *Judge*, held that the Secretary of Health, Education and Welfare (HEW) had properly denied child's Social Security insurance benefits to appellant, an adopted minor. We reverse.

The facts are not in dispute. Appellant Loren Damon, now 15 years old, has lived with Mrs. Vivian Damon and her husband since infancy. His status in their home during most of the period was that of a foster child, that is, he was under the legal custody of the Vermont Department of Social Welfare but living in the Damons' home. Although the Damons treated Loren as a natural son [1] and made several inquiries about adopting him, they did not do so until August, 1972; they delayed instituting adoption proceedings, the court below found, because of assurances from officials of the Vermont Department of Social Welfare that Loren would never be taken from

them. On November 1, 1971, several months prior to the adoption, Mrs. Damon became eligible for Social Security "old-age" benefits.

The problem in this case arises from the fact that the adoption occurred after November 1, 1971. Had Loren been adopted prior to that date, in accordance with desires expressed several times by the Damons, he would have been entitled to child's benefits as an adopted, unmarried child living with a parent who is entitled to old-age benefits. 42 U.S.C. § 402(d)(1)(B), (d)(3). Moreover, had Loren been Mrs. Damon's natural child born after November 1, 1971, or her stepchild adopted after that date, he would also have been entitled to benefits. *Id.* § 402(d)(3), (d)(8)(C). Loren, however, did not fit into any of these categories and hence was denied benefits by the Secretary of HEW.

The statute on which the Secretary based his decision, 42 U.S.C. § 402(d)(8)(D)(ii), denies child's benefits to a child (other than a natural child or a stepchild) adopted after a parent becomes eligible for old-age benefits, unless the child received at least one-half of his support from that parent in the year immediately prior to the date of the parent's eligibility for benefits.[2] The Secre-

---

* Hon. Charles E. Wyzanski, Jr., of the United States District Court for the District of Massachusetts, sitting by designation.

** Hon. James S. Holden, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

1. The district court expressly found that the "relationship between Loren and his foster parents . . . was as close as that of any child to natural or adopting parents." The court quoted testimony of Mrs. Damon as follows:

> [The Department of] Welfare took him from a home of seven children, brought him to me and he was a sick little boy. I made the trip to St. Johnsbury twice a week to take him to a doctor till after he was three years old because he was so, he was malnutrition, his back was crooked, he couldn't use his right arm very much and I spent a lot of time with that little boy till he was about six years old. Then, when he, he gained and he was a real nice looking little boy when he was growing up and we thought just as much of him as we did our own little boy. Couldn't

have been our own any more than if we'd a, I'd a given birth to him.

2. 42 U.S.C. § 402(d)(8) provides in pertinent part:

> In the case of—
> (A) an individual entitled to old-age insurance benefits . . .
> a child of such individual adopted after such individual became entitled to such old-age . . . insurance benefits shall be deemed not to meet the [dependency] requirements of [the child's benefits subsection] unless such child—
> (C) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or
> (D)(i) was legally adopted by such individual in an adoption decreed by a court of competent jurisdiction within the United States,
> (ii) was living with such individual in the United States and receiving at least one-half of his support from such individual (I) if he is an individual referred to in subparagraph (A),

tary ruled that Mrs. Damon did not provide over one-half of Loren's support in the year prior to November 1, 1971. During that year, foster care payments made to the Damons by the State of Vermont totaled a sum that was over half of the money spent by the Damons on Loren's behalf; the Secretary treated these foster care payments as support of Loren by the State, rather than as consideration paid to or reimbursement of the Damons for their care of Loren. Following administrative appeals, Loren sought review pursuant to 42 U.S.C. § 405(g) in the district court, which, following a remand for the taking of additional evidence before an administrative law judge, granted the Secretary's motion for summary judgment.

The district court rejected appellant's statutory argument that the foster care payments should not be viewed as State support of Loren, as well as the constitutional argument that the distinctions made between adopted children and natural and stepchildren denied him the equal protection of the laws that is guaranteed by the Fifth Amendment to the United States Constitution, see Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Because we believe that the district court erred on the statutory question, we are able to meet "our obligation to avoid deciding a case on constitutional grounds [when] a statutory ground is available." United States v. Companion, 545 F.2d 308, 310 (2d Cir. 1976), citing Ashwander v. TVA, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

■ This court has repeatedly held that "the Social Security Act is a remedial statute, to be broadly construed and liberally applied," Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969), "in consonance with its . . . humanitarian aims," Eisenhauer v. Mathews, 535 F.2d 681, 686 (2d Cir. 1976). See, e. g. Rosenberg v. Richardson, 538 F.2d 487, 490 (2d Cir. 1976), and authorities cited therein. These general principles of liberal

construction plainly apply to the child's benefit provisions here under consideration. See Eisenhauer v. Mathews, supra, 535 F.2d at 686; Haberman v. Finch, supra, 418 F.2d at 666–67; Ziskin v. Weinberger, 379 F.Supp. 124, 126 (S.D.Ohio 1973). In practical terms the principles mean that, when a Social Security Act provision can reasonably be construed in favor of the one seeking benefits, it should be so construed. See Broussard v. Weinberger, 499 F.2d 969, 970 (5th Cir. 1974); Ziskin v. Weinberger, supra, 379 F.Supp. at 126; cf. Williams v. Richardson, 523 F.2d 999, 1002 (2d Cir. 1975) (equitable adoption concept recognized "for the purpose of allowing benefits absent strict compliance with statutory requirements").

■ Our task of construction in this case revolves around the phrase "support from [the eligible] individual" in 42 U.S.C. § 402(d)(8)(D)(ii). See note 2 supra. If all funds spent by the eligible parent on behalf of the child can be viewed as support "from" the parent, appellant here is entitled to benefits, since the Vermont foster care payments were concededly given to Mrs. Damon, who then mingled these monies with her own funds and spent whatever was necessary for Loren's support. No assistance in construing the critical phrase can be found in the statute, but HEW regulations make the issue turn on whether the child received "contributions" from the eligible individual amounting to at least one-half of his total support for the relevant year. 20 C.F.R. § 404.350(b)(2) (1976). "Contributions" are defined as those sums "actually provided by the contributor from his own property." Id. § 404.350(d). Mrs. Damon "actually provided" all of Loren's support, in the sense of spending money on his behalf that was in her possession and providing a home, board and other necessaries, but we must turn to Vermont law to determine whether all of the money so spent could be considered Mrs. Damon's "own property."

for the year immediately before the month in which such individual became entitled to old-age insurance benefits . . . and

(iii) had not attained the age of 18 before he began living with such individual. . .

In holding that the foster care payments were not Mrs. Damon's own property, the district court relied largely on the testimony of Vermont's supervisor of foster care licensing, one Mrs. Remick. She testified that foster care payments are not meant as compensation for the foster parents, although the Vermont statutes define foster care as "care of a child, for a valuable consideration." 33 Vt.Stat.Ann. § 2752 (Cum.Supp.1976); *see also id.* § 2851(c), and although her department's regulations refer to foster care as "purchased," 3 *Regulations of Vt. Dep't of Social Welfare* § 3410. She also testified that the payments are set according to the needs of the child, without regard to the services provided by the foster parent, and that the State expects the funds to be spent exclusively for the child. But her testimony further indicates, as the district court recognized, that the State does not require the parents to account for the funds in any way (with the exception of some minimal accounting with regard to a clothing allowance); the parents are essentially free to spend the funds in any manner they choose, as long as the child's basic needs are met. Moreover, she testified, if the foster care payments exceed the amount spent on the child, the balance may be kept by the parents; no refund is sought by the State. Finally, while both Mrs. Remick's testimony and a State "Guide to Foster Parents" indicate that foster care payments are not considered "income" for federal tax purposes, this does not apply to amounts in excess of expenditures on the child, which amounts are treated as taxable income, *see* I.T. 4068, 1952–1 C.B. 7.

▇▇▇ While these facts about Vermont foster care payments are susceptible to the interpretation given them by the district court, they are at least equally, if not more, susceptible to an interpretation in favor of

appellant, with the latter interpretation favored under the principles of construction discussed above. With regard to the apparent conflict between Mrs. Remick's testimony and the Vermont statute and regulations, resolved by the district court in favor of the testimony, we believe that the plain words of a statute, particularly when reinforced by an official administrative interpretation, should control. The near-total freedom that the foster parents have in spending the payments, moreover, is an important indication that the payments are their property, for in Vermont, as elsewhere, unhindered possession of an item, particularly when accompanied by use of the item as one's own, is strong evidence of ownership, *State v. Rowell,* 120 Vt. 166, 170, 136 A.2d 349, 351 (1957); *State v. Kamuda,* 98 Vt. 466, 473, 129 A. 306, 309 (1925). Finally, the tax status of foster care payments provides no definitive assistance either way on the question before us, since the taxation of amounts not spent on the child suggests that some element of compensation is involved.[3]

We therefore conclude that, for purposes of the narrow issue presented by this case, the foster care payments to Mrs. Damon should be considered her property. Our conclusion is reinforced by the fact that the congressional purpose in enacting the one-half support requirement—to prevent "abuse through adoption of children solely to qualify them for benefits," H.R.Rep. No. 92–231, 92d Cong., 2d Sess. (1972), *reprinted in* [1972] U.S.Code Cong. & Ad.News 4989, 5039—is not implicated in this case, where all concede that Loren was adopted for reasons entirely unrelated to Social Security benefits, *see Stanley v. Secretary of H.E.W.,* 356 F.Supp. 793, 803 (W.D.Mo. 1973).[4] Indeed, the district court stated

---

**3.** If the payments were not viewed as in any way *compensation,* there would be little sense in taxing the excess of payments over expenses in any one taxable year, since that excess might be spent on the child's behalf during the next year. Treating the excess as taxable income thus suggests that the tax authorities do not view the payments simply as funds given by the State to the child.

**4.** Indeed, the general purpose of Congress in enacting the children's benefit provisions as a whole—"to provide at least some measure of income and security to those who have lost a wage-earner on whom they depended," *Davis v. Richardson,* 342 F.Supp. 588, 593 (D.Conn. 1972) (three-judge court)—will be furthered by our holding here, since a significant proportion (albeit not half) of Loren's support prior to

that "if simple fairness alone is considered it would seem that the child would prevail." We believe that the law in this case is in accord with the dictates of fairness. It is a cause for regret that, in our sophisticated and increasingly bureaucratic society, such a statement cannot more often be made.

Judgment reversed and cause remanded for determination of amount of benefits due appellant.[5]

November, 1971, came directly from Mrs. Damon's pre-retirement earnings.

5. We note that the effect of our holding on the public fisc is unlikely to extend beyond the benefits paid to appellant. In addition to the fact that the holding is grounded in Vermont law, the facts of the case are so unusual that neither party has cited, and we have not been able to find, even one case remotely analogous.