STATE *v.* HIMAN KRINSKI.

January Term, 1905.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed November 3, 1905.

*Intoxicating Liquors—Keeping for Illegal Sale—Evidence—*
*Illegal Search Warrant—Jamaica Ginger—No. 90, Acts*
*1902.*

In a prosecution for keeping intoxicating liquor for sale without a
license, certain articles found on respondent's premises, and which
tended to establish his guilt, were admissible in evidence against
him, although they were seized and taken from his possession by
virtue of an illegal search warrant.

There is a plain distinction between the seizure and production in
evidence of articles which are not the basis of the charge and are
merely of an evidentiary character, and the seizure and production
in evidence of property kept for an illegal use.

In a prosecution for keeping intoxicating liquor for sale without a
license, the State is not confined to evidence of the liquor in respect
of which it claims a conviction, but may show that other liquors
were kept in the same place.

In a prosecution for keeping intoxicating liquor for sale without a
license, it was proper to allow the State to show, as characteriz-
ing the place and business, that upon the occasion of a search of
respondent's store, while two intoxicated men were wrangling over
a bottle of soda-water, the respondent came into the room.

In a prosecution for keeping intoxicating liquor for sale without a
license, it appeared that several small flask-shaped bottles of Ja-
maica ginger were found in respondent's store, and that 300 empty
bottles of the same kind were found in an adjoining back room.
*Held*, that it was not error to permit a witness for the State, con-
cerning whose competency no question appears to have been raised,
to testify that he never saw such bottles used in a proper phar-
macy, and that glass manufacturers catalogued what they call a
"ginger bottle," of a different shape and size.

In a prosecution for keeping intoxicating liquor for sale without a
license, the State relied upon a certain preparation of Jamaica

ginger, which respondent claimed that he kept for sale as a medicine only. *Held*, that the instruction, "If this preparation * * * * is a beverage, which is capable of producing intoxication, and may be used for that purpose, then it is prohibited," when considered in connection with the rest of the charge, could not have harmed the respondent.

Although a liquid which contains more than one per cent. of alcohol was manufactured for a lawful purpose, and its sale as a medicine is lawful, yet, when sold as an intoxicating beverage, it is "intoxicating liquor," within the meaning of No. 90, Acts 1902.

No. 90, Acts 1902, does not exclude from the term "intoxicating liquor" medicinal preparations, fluid extracts, and toilet articles of which alcohol is the solvent principle.

COMPLAINT, by a License Commissioner of the town of West Rutland, for keeping and exposing for sale intoxicating liquor without a license, in violation of No. 90, Acts 1902. Plea, not guilty. Trial by jury at the March Term, 1904, Rutland County, *Tyler, J.*, presiding. Verdict, guilty; and judgment thereon. The respondent excepted.

The respondent excepted to the failure of the court to charge as requested in his nine requests, which are as follows:

"First: That the jury be instructed that the respondent cannot be convicted of keeping for illegal sale the Jamaica ginger in question, unless the jury is satisfied by the requisite measure of proof that the substance is a beverage.

Second: In order to constitute this substance a beverage, the jury must find that it is such a substance as would ordinarily be drunk for the purpose of its alcoholic and intoxicating effects and not one that is ordinarily and commonly used for legitimate medicinal or culinary purposes.

Third: The fact that this substance contains more than 1 per cent. of alcohol does not make it intoxicating liquor within the meaning of the statute. The statute does not undertake to prohibit the use and sale of medicines or household remedies, nor of articles designed for household use,

such as cooking, even although they contain more than 1 per cent. of alcohol.

If the view expressed in the first and second requests is not entirely adopted by the court, the respondent further requests that the jury be instructed as follows:

Fourth: If the substance in question is really made in good faith, and sold and used as a medicine, then it is not a beverage within the meaning of the law, and the fact that it is extensively sold by grocers and druggists as such medicine, and has the medicinal effects claimed as the evidence of the respondent tends to show, are legitimate matters for the consideration of the jury in the determination of this question.

Fifth: The burden is upon the prosecution to prove that the substance is in fact a beverage, and that the defendant did not intend to sell it in the way in which he legitimately might, and unless these facts are established beyond a reasonable doubt by the evidence in this case, the verdict should be acquittal.

Sixth: The presumption of law is that this substance purporting to be Jamaica ginger and a medicine is what it purports to be, and unless this presumption is overcome by the evidence in the case, and the contrary established by the requisite measure of proof above indicated, it should not be taken to be a beverage or intoxicating liquor within the meaning of the statute.

Seventh:  Even although this medicine is not of the strength and does not contain the proportions of alcohol and other ingredients required by the so-called 'standard,' yet if it is honestly and in good faith prepared and sold as a medicine, the fact that it is not up to *standard* does not change its character as such.

Eighth: Even although the jury should think that as a medicine it was not the most efficacious, nor as good a remedy

as a physician's prescription or some other remedy for a given ailment, that fact would not alter its character nor justify a finding that it is intoxicating liquor within the meaning of the statute.

Ninth: The jury are not at liberty to consider, nor to be governed by, any evidence whatever except the evidence in the case given in court, whether bearing upon the purposes or use to which the substance in question was to be put by the respondent, or the character of the substance itself, or the likelihood or possibility of its being used as a beverage. The only evidence upon any of these subjects that the jury should consider and weigh is the evidence given in court."

*Butler & Moloney* for the respondent.

Respondent's fourth request is in the exact language of *Russell* v. *Sloane,* 33 Vt. 659.

*R. A. Lawrence,* State's Attorney, for the State.

The officers were competent to testify as to what they found in respondent's store, regardless of the legality of the search warrant. 12 Cyc. 402; *State* v. *Mathers,* 64 Vt. 101; *Com.* v. *Dana,* 2 Met. 337.

MUNSON, J. The respondent objected to the production of the articles found in his building, and testimony relating thereto, on the ground that the search in which the articles were seized was made upon an illegal warrant. The court held the evidence admissible, without regard to the legality of the warrant; and this was correct. *Adams* v. *New York,* 192 U. S. 585, 48 Law ed. 575. The respondent relies upon *State* v. *Slamon,* 73 Vt. 212, and *Boyd* v. *United States,* 116 U. S. 616, 29 Law ed. 746; but these cases, however regarded,

are not controlling. There is a plain distinction between the seizure and production of papers which are not the basis of the charge and are merely of an evidentiary character, and the seizure and production of property kept for an illegal use.

The respondent objected to evidence regarding the Jamaica ginger, on the ground that evidence had already been introduced regarding the finding of some alcohol. The State was not bound to confine its evidence to the liquor for which it claimed a conviction. The finding of other liquors in the same place would bear upon the question whether the kind relied upon was kept for illegal sale.

The State was permitted to show that at the time of the search two men, under the influence of liquor, were wrangling over a bottle, during which wrangling the respondent came into the room. . It appeared further that this bottle was seized, and afterwards found to contain only soda-water. This evidence was admissible as one of the circumstances of the search and seizure, and as tending to characterize the place and business.

The bottles purporting to contain Jamaica ginger were small, flat, flask-shaped bottles, and there was evidence that the officer found nearly 300 empty bottles of the same kind in the back room of the store. Dr. Wiltse, the state chemist, testified to the differences between the article seized and the standard Jamaica ginger, and stated further that there was a standard form of bottle put in the glass manufacturers' catalogues for putting up the medicinal Jamaica ginger, and that he had never seen it put up in bottles of the shape of those put in evidence. He was also permitted to testify under respondent's exception that he never saw a bottle of the style and shape of these bottles used in a proper pharmacy, and that glass manufacturers put in their catalogues what they call a "ginger bottle," of a different shape and style. It does not

appear that any question was raised as to the witness' competency to testify upon this subject, and we think the matters testified to had a legitimate tendency to sustain the charge.

The respondent submitted several requests as to what constitutes a beverage, and excepted to the court's refusal to comply therewith, and to its charge upon that subject; and now argues that the court erred in saying: "If this preparation * * is a beverage that is capable of producing intoxication, and may be used for that purpose, then it is prohibited." But this sentence must be considered in connection with other parts of the charge. The court first took up the question whether this Jamaica ginger was a beverage within the meaning of the law. And in considering this question, after referring to the evidence in respect to its being used as a beverage, the court said, in substance, that the law did not mean that it must be classed among liquors that are ordinarily used as beverages, but that it is sufficient if the liquid is one that can practically be used as a beverage, and be drunk for the purpose of intoxication; that if the preparation was a beverage capable of producing intoxication, and one that could be used for that purpose, then it fell within the list of intoxicating liquors, and the sale or keeping for sale was prohibited. The evident meaning of this is that a preparation of this, kind may in some circumstances be classed with intoxicating liquors, and so come within the prohibition, although not ordinarily used as a beverage; and the remainder of the charge makes it certain that it must have been so understood by the jury. For the court then proceeds to consider the purpose for which this article was kept; and states the claim of the respondent to be that he kept it to sell for medicinal purposes, and not to sell as a beverage; and declares it to be the leading question in the case whether the respondent kept it with intent to sell it as a beverage; and directs the attention of the jury to the

evidence upon one side and the other bearing upon that point. The court said further that if they found the respondent had made sales of this preparation to be used as a beverage for the purpose of intoxication, that would be a circumstance tending to show that the stock on hand was designed for the same purpose. Later, the court concluded a restatement of the case in these words: "The important inquiry, I repeat, is, was it kept for the purpose of sale—with intent to sell it as a beverage." It is clear that the respondent was not harmed by the sentence complained of, if the court was right in holding that the liquid in question could be made a beverage under the law then existing.

The respondent insists that it is the manifest purpose of the act of 1902 to exclude from the term "intoxicating liquor" all medicinal preparations, fluid extracts, and toilet articles, of which alcohol is the solvent principle, even though they contain more than one per cent. of alcohol. We think the act was not intended to effect any change of the law in this respect, and that *State* v. *Kezer,* 74 Vt. 50, is still applicable, as regards the purpose of the keeping or sale.

*Judgment that there is no error in the proceedings, and that the respondent take nothing by his exceptions.*