ESSEX COUNTY COURT OF QUARTER SESSIONS.

## STATE OF NEW JERSEY v. ROY BLACK AND TWENTY OTHER PERSONS.

Decided December 16, 1926.

Evidence—Unreasonable Searches and Seizures—Defendants, Charged With Crime, Allege That Their Books and Records Were Taken as the Result of an Unreasonable Search and Seizure, and Move For Their Return—Court Reviews at Length the Federal and State Cases on This Subject, and Holds That Though the Books Were Seized by Unreasonable Search and Seizure, There is No Reason to Suppress Them as Evidence, That They are, Notwithstanding, Admissible.

For the state, *J. Victor D'Aloia.*

For the motion, *William A. Wachenfeld* and *Harold Simandl.*

FLANNAGAN, J. On the 4th day of October, 1926, certain county detectives, acting under the prosecutor of the pleas, arrested certain of the defendants at their respective places of business and there seized the minutes and other books in their possession of the "Federation of Kosher Butchers Association," a corporation organized under the laws of New Jersey. The detectives held a warrant for the arrest of the defendants individually who stand indicted by the grand jury for conspiracy. Such books were in the defendants' possession as recording and financial secretary, respectively, of such corporation.

The prosecutor of the pleas, who has possession of these books, proposes to use them on the trial of the indictment as evidence against the defendants tending to support such charge. The corporation now comes into court and moves by petition to prevent the use of such books as evidence by an order directing their return and prohibiting their use, on the ground that they were obtained by illegal search

and seizure in violation of paragraph 6 of article 1 of the constitution of the State of New Jersey.

The essence of the application is to prevent the use of the books as evidence. If possession of the books were the only object sought, resort could and would be had to the usual means of recovering personal property wrongfully taken or held and no excuse for proceedings by motion in a criminal court could be found.

Testimony was taken upon the motion and an issue of fact raised, but assuming for the moment that petitioner has the necessary standing to move in this action and that the books were seized by unreasonable search and seizure in violation of the constitutional provision, the question still remains as to whether the petitioner is entitled to an order directing their return and for their suppression as evidence herein.

The petitioner cites in support of its motion cases decided by the United States Supreme Court, all of which taken together establish that under the provisions of the fourth amendment of the United States constitution against unreasonable searches and seizures, the federal court will, on motion before trial, order the return and suppression as evidence of books and papers of a private corporation seized by an officer of the government by unreasonable search and seizure; and, further, will, on the trial, without any motion previous to the trial, exclude them as evidence if it appears uncontradicted by the testimony that they were so obtained; and, further, that evidence once obtained by the government by unreasonable search and seizure must remain effectively suppressed against any further subpœna or search warrant unless such subpœna or search warrant is based upon evidence obtained independently of the articles ordered returned or the information illegally obtained, even though holding that no privilege attaches to books and papers of a private corporation under the fifth amendment against self-incrimination either in favor of the corporation or the officers thereof or in favor of an officer having acquired personal ownership thereof. *Silverthorn Lumber Co.* v. *United States,* 251 *U. S.* 385; *Wheeler* v. *United States,* 226 *Id.* 478 (489); *Wilson*

v. *United States*, 221 *Id.* 361 (385) ; *Grant* v. *United States*, 227 *Id.* 74 (79, 80) ; *Agnello* v. *United States*, 269 *Id.* 20.

It goes without saying that the provisions of the constitution of this state against unreasonable searches and seizures must and will be respected and enforced by the courts of this state and by appropriate legislation if any be needed. The only question now to be determined is, Has the particular practice adopted by the federal courts of enforcing the provisions of the federal constitution by indirection, through motion and order thereon suppressing evidence tending to prove the defendants guilty of crime, been adopted by the courts of this state generally to enforce a corresponding provision of the state constitution, and will this practice be adopted by this court? This course of the federal courts involves the creation of a new exception to the general rule of evidence that books and chattels illegally obtained will, notwithstanding, be received in evidence if evidential *per se,* and the adoption of a new practice of adjudging the right to possession to personal property on a motion and ordering its delivery thereon.

It will be observed that the result of such practice is not to punish the individual who has violated the constitutional provision by making an unreasonable search and seizure, but to shield the criminal and penalize the people of the state by suppressing evidence tending to prove an offense "against its peace and dignity."

The practice is, and must patently be applied, without reference to the guilt or innocence of the defendant or the character of the article seized. "It extends to all equally— to those justly suspected or accused as well as to the innocent." *Agnello* v. *United States, supra.* It has been suggested that there is a distinction to be drawn between seized articles which are, apparently, contraband on inspection, like a blackjack, and books which are on their face innocent, though this distinction is seemingly not recognized in the Agnello case. Whether a thing is innocent or not must depend upon the circumstances in its possession. If the doctrine applies to one class of incriminating evidence it must

apply to another, if it covers books and papers it covers burglars' tools, narcotics and infernal machines. If the unreasonable search and seizure is what condemns it, I can see no distinction in principle between the seizure of a blackjack and the seizure of books; either may be innocent in themselves and lawfully possessed, depending upon the circumstances of the particular case. The one may be kept innocently in the home as a weapon of protection against robbery, and the other in the office as a record of ordinary business transactions. Either may be possessed as instrumentalities in accomplishing a criminal purpose.

The whole subject is very fully and ably considered by Professor Wigmore; the authorities, state and federal, reviewed, and the practice in the federal courts vigorously attacked as a new and unwarranted innovation in the law of evidence. In commenting upon this method of enforcing the constitution as enunciated by the Supreme Court, this distinguished author condemns it as "indirect and unnatural," and says:

"The natural way to do justice here would be to enforce the splendid and healthy principle of the fourth amendment directly, *i. e.*, by sending for the high-handed, over-zealous marshal who had searched without a warrant, imposing a thirty-day imprisonment for his contempt of the constitution and then proceed to affirm the sentence of the convicted criminal. But the proposed indirect and unnatural method is as follows: Titus, you have been found guilty of conducting a lottery; Flavius, you have confessedly violated the constitution. Titus ought to suffer imprisonment for the crime, and Flavius for contempt. But, no! We shall let you *both go free*. We shall not punish Flavius directly, but shall do so by reversing Titus' conviction. This is our way of teaching people like Flavius to behave, and of teaching people like Titus to behave, and, incidentally, of securing respect for the constitution. Our way of upholding the constitution is not to strike at the man who breaks it, but to let off somebody else who broke something else." See 4 *Wigm. Ev.* (*2d ed.*), §§ 2183, 2184, 2259*b* and 2264.

The fourth and fifth amendments of the United States constitution have no application to state courts; they are limitations upon federal power alone, and rules of evidence and practice established in federal courts to enforce their provisions have no binding effect on state courts.

Decisions in the courts of many of the states adhere to the view supported by Professor Wigmore as opposed to that adopted by the federal courts. In *People* v. *Defore,* 242 *N. Y.* 13, Judge Cardoza (now elected Chief Judge), in a very learned and able opinion, says that the federal doctrine has been adopted in fourteen states and rejected in thirty-one. He reviews the authorities fully and with the unanimous concurrence of the court rejects the federal view.

See *People* v. *Defore, supra,* and cases there cited from the various states.

The administration of the law in New Jersey has always been practical and never over-sensitive to shield an accused. Where an accused on trial remains silent and does not take the stand and contradict evidence of facts adduced against him which he could deny, the judge may comment upon his failure to do so instead of sitting in impotent silence. *Parker* v. *State,* 61 *N. J. L.* 313; 62 *Id.* 801; *State* v. *Howard,* 83 *Id.* 638; *State* v. *Twinning,* 73 *Id.* 691; *State* v. *Schlosser,* 85 *Id.* 165; 86 *Id.* 374; *State* v. *DiBeneditto,* 82 *Id.* 171; *State* v. *Callahan,* 76 *Id.* 427; *State* v. *Wines,* 65 *Id.* 31; *State* v. *Bien,* 95 *Id.* 474; *State* v. *Schilling,* 112 *Atl. Rep.* 405; *State* v. *Kisik,* 2 *N. J. Adv. R.* 1036. And· the judge also has the right in New Jersey to express his opinion on the guilt or innocence of an accused so long as he makes it appear that the jury is the ultimate judge of the facts. Indeed, it is held sometimes to be the duty of the judge to give the jury the benefit of his experience by an expression of his opinion on the facts. *State* v. *Bien, supra; State* v. *Schilling,* 112 *Atl. Rep.* 403; *State* v. *Randell,* 95 *N. J. L.* 452; *State* v. *Lesson,* 3 *N. J. Mis. R.* 970; *State* v. *Schuyler,* 75 *N. J. L.* 487; *State* v. *Hummer,* 73 *Id.* 714; *State* v. *Pulley,* 82 *Id.* 579; *State* v. *Dracone,* 1 *N. J. Adv. R.* 1490; *State* v. *Kashkevich,* 1 *Id.* 488; *State* v. *Warrody,* 77 *N. J. L.* 348;

*State* v. *Overton,* 85 *Id.* 287. And this state has also long ago adopted the rule that writings obtained illegally are nevertheless admissible in evidence.

In *State* v. *McQueen,* 69 *N. J. L.* 522 (528), Mr. Justice Mahlon Pitney, speaking for the State Supreme Court, says:

"As to the mode in which the document now in question was obtained, it is very generally held that papers unlawfully procured, even by means of unjustifiable search and seizure, are nevertheless admissible if evidential *per se."*

(It is worthy of note that Mr. Justice Pitney, having subsequently become a justice of the United States Supreme Court, dissented in the Silverthorn Lumber Co. case cited above.)

In *State* v. *Gould,* 1 *N. J. Adv. R.* 1238, Chief Justice Gummere, speaking for the Supreme Court (Justices Minturn and Black sitting with him), says:

"The argument was that in permitting the shoes obtained in the way recited to be submitted as evidence to the jury, the defendant's constitutional right to be protected against unreasonable search and seizure was violated. But conceding for the purpose of deciding the point raised, that the taking of the shoes was an unlawful invasion of defendant's constitutional right, that fact was no bar to the admission in evidence of these articles. As was stated by Mr. Justice Pitney, writing for this court in *State* v. *McQueen,* 69 *N. J. L.* 522, 528, 'it is * * * generally held that papers [and other articles] unlawfully procured, even by means of an unjustifiable search or seizure, are nevertheless admissible if evidential *per se.'* And this principle was re-asserted by this court in the case of State *v.* Lyons, decided at our last November term. The last reason argued is that the court, in a proceeding had before the trial, refused to order the return of this pair of shoes to the defendant upon an application made for that purpose. Such refusal, however, cannot vitiate the conviction even if the judicial action was erroneous."

In *State* v. *King,* 4 *N. J. Mis. R.* 218, the Supreme Court (Justices Trenchard, Katzenbach and Lloyd sitting), says:

"Assuming, however, liquor was taken in the raid and the raid was made without a search warrant, these facts do not warrant a trial judge in refusing to admit in evidence the liquor taken. A person is only protected from testimonial compulsion; that is, from the extortion of unwilling confessions or declarations implicating him in crime. Chattels obtained from a person's control without the use of process against him as a witness may be used, evidentially, for the proof of their identity, or other circumstances affecting them, must be made by others without the employment of the accused's oath. *Wigm. Ev.,* § 2264. In *State* v. *Krinski,* 62 *Atl. Rep.* 37; 78 *Vt.* 162, it was held by the Supreme Court of Vermont that in a prosecution for keeping for sale intoxicating liquors without a license, it was proper to admit in evidence liquors which had been seized, irrespective of the legality of the warrant. The provisions of the federal constitution regarding unreasonable searches and seizures are not limitations upon state powers. Section 6 of article 1 of the New Jersey state constitution protects persons and property only against unreasonable searches and seizures. In view of the evidence which the state possessed of the character of the place prior to the raid, it cannot well be said, in our opinion. that the seizure of the liquor found in the place was in any sense unreasonable. The admission of the liquor seized in evidence was not error."

In State *v.* Lyons the Court of Errors and Appeals unanimously affirmed the Supreme Court (1 *N. J. Mis. R.* 15), for the reasons stated in its opinion below. The Supreme Court (Justices Kalisch, Black and Katzenbach sitting) says in such opinion:

"The trial court undoubtedly thought that the objection was the same as previously made, viz., that the exhibit was not admissible because taken without a search warrant. It has been settled in this state in the case of *State* v. *McQueen,* 69 *N. J. L.* 522, that papers unlawfully procured by an unjustifiable search and seizure are admissible in evidence if evidential *per se."*

If this language is to be taken to mean what it says, then these cases show that the rule is settled in New Jersey that articles evidential *per se*, though it appear on the trial that they were obtained by unreasonable search and seizure, are admissible in evidence notwithstanding. The established New Jersey rule cannot be harmonized with the federal court rule, for the federal court holds that if the unconstitutional character of the seizure appear uncontradicted upon the trial it is reversible error to have admitted the evidence. *Agnello* v. *United States, supra.*

It only remains to consider whether in New Jersey a different situation would arise if a motion to suppress be made before the trial.

If the court on a trial is not called upon to suppress evidence when it is assumed that it was obtained by unreasonable search and seizure, why should it do so on a motion before trial when it appears that it was so seized?

It is claimed that such a practice has already been established. If so, it is in conflict with the cases already cited. But no such practice has been established in this state.

There is no statute in New Jersey authorizing the court on a motion to adjudicate the right to possession of personal property and to order returned such property alleged to have been illegally seized. Nor is there a single decision in the courts of our state where property has been, on motion, ordered returned because seized by unlawful search and seizure, or evidence illegally obtained suppressed on motion to do so. The attempt has been made a number of times, but in every instance the motion has been denied; and while language favorable to petitioner's present contention has been used it is all *obiter dicta.*

In *State* v. *Mausert,* 88 *N. J. L.* 286, it could be inferred from the language of the opinion that if there had been an unreasonable search and seizure it would have been the duty of the trial court to order a return of the book illegally seized, but the court does not say so, and it was not necessary to decide the question as the decision was placed on the ground that there was no unreasonable search and seizure. If there

was no unreasonable search and seizure it was unnecessary to decide what would have been done had there been one.

In *State* v. *Gilberson,* 99 *N. J. L.* 85, the decision was also on the ground that there was no unreasonable search and seizure, but on the contrary that the search and seizure was with the defendant's consent.

The case of *State* v. *Condon,* 40 *N. J. L. J.* 293, was one in Middlesex Oyer and Terminer, and the decision was also placed on the ground that the search and seizure was not unreasonable but was by consent. In this case the language strongly supports petitioner's contention, but as it appeared that the search and seizure was by consent it was not necessary to decide what would have been done had it been unreasonable and illegal.

I conclude that if the books were seized by unreasonable search and seizure this does not constitute a reason to suppress them. They are, notwithstanding, admissible in evidence. In so far as the motion asks for the recovery of their possession, a remedy is invoked which does not exist by motion in the courts of this state. The motion will therefore be denied.

The defendants from whose custody the books were taken testified on the motion, but they do not say they made any protest, objection or opposition at the time, or that any promise was made or threat or force used, but they say that a misrepresentation was made. They say that detective Slutsky stated, "We have a warrant for you and the books," and thereupon arrested them and took the books. Detective Slutsky had no warrant for the books, and I am unable to accept the statement that he made any such deliberate and false representation. However, having decided the motion on the legal questions involved, it is not necessary to make any decision on the facts.