REUBEN CLARK, Administrator of Sarah Clark's Estate *v.* E. C.
Smith and Chas. M. Hays, Receivers of the Central
Vermont Railroad Company.

January Term, 1900.

Present : TAFT, C. J., ROWELL, TYLER, START, THOMPSON and WATSON, JJ.

Opinion filed March 3, 1900.

*Evidence—Collateral facts*—Upon the question whether a train, after stopping·
at a particular station, was suddenly started and so handled as to give
a sudden jolt to the cars, evidence of the manner in which the train
had been previously handled and managed on the same trip, and of ·
similar jolts at other stations along the route, is irrelevant.

ACTION ON THE CASE in two counts brought by Reuben Clark,
Administrator of Sarah Clark's estate, to recover for an injury to
his intestate which resulted in her death. One count was founded
on V. S. 2447, and the other on V. S. 2451 and 2452.

Plea, general issue. Trial by jury. Bennington County,
June Term, 1899, *Munson*, J., presiding. Verdict and judgment
for the plaintiff. The defendants excepted.

The case, so far as it was material to the decision, is stated
in the opinion.

*F. C. Archibald* and *Barber & Darling* for the plaintiff.
*Chas. M. Wilds* and *H. C. Royce* for the defendants.

TAFT, C. J. The plaintiff claimed that his intestate was a
passenger on the defendant's train from Brattleboro to London-
derry ; that when the train reached Jamaica, orders were given
for the passengers to change cars ; that the intestate arose from
her seat for that purpose and stood in or near the door of the
car ; that the train had stopped, and was then so suddenly started
and again stopped, that in consequence, she was thrown through·
the door to the ground and so injured that she died two days
after. The testimony of all the witnesses tended to show that
the train had stopped at the time of the accident ; that it had

come to a standstill before the decedent started to leave the car. The testimony of the plaintiff's witnesses tended to show that the train, after stopping, was suddenly started ; that as the witnesses described it, they, the trainmen, gave a " yank" to the train. One of the witnesses described it as a "jolt" and another as a slight snap, and that the train went four or five feet and then stopped.   One witness said the train started and gave a sudden stop and the decedent fell out of the door.   One of the witnesses testified that when the train had come to a standstill, the decedent " had got up first, and stepped over the bench and got to the door as the car gave a jolt and threw her out of the door." The testimony of the defendants tended to show that after the train came to a standstill, there was no movement of the train until after the passengers went out of the car which they intended to, and did leave, at the Jamaica station, and that the decedent fell, in attempting to go out of the car when the car was not in motion.   In this situation of the case, testimony was admitted to show how the train was handled on the way from Brattleboro to Jamaica, and that the train was jerked violently at other stations, for the purpose of characterizing the way the train-men were handling the train, the management of it, and the way it was under control.   The Court said, it might " be material as showing the condition of the train as affected by the running."   How the train was managed at other stations had no tendency to show how it was managed at Jamaica ; that it was jerked violently at other stations, had no tendency to show that when standing still at Jamaica, it was suddenly started and then stopped in the manner the plaintiff claims it was at the time of the accident, and such testimony was not relevant upon the question of the condition of the train.   How it was running at other stations was collateral to the issue on trial and its admission was error.   There having been error upon the trial in this respect, renders it unnecessary for us to consider the question in respect to damages.

*Judgment reversed and cause remanded for a new trial.*