STATE *v.* ISRAEL MERCIER.

January Term, 1925.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed February 4, 1925.

*Jury—Constitutional Right to Impartial Jury—Legislature May Regulate Mode of Enjoying Right if Right Not Thereby Impaired—G. L. 1652 Does Not Give Officer Too Wide Latitude in Selecting Names—Extent of Right to Examine and Challenge Jurors—Method of Selecting Jurors Provided in G. L. 1652 Does Not Deny Opportunity to Exercise Right of Challenge—Presumption of Regularity—Right of Challenge Provided by G. L. 1652 Need Not Be Exercised at Very Time Juror's Name Drawn—Sufficiency of Evidence to Show Liquid to Be Alcohol and Warrant Inference That Cans Used to Contain Alcohol—When Liquid Shown to Be Alcohol Evidence That Alcoholic Content Exceeded Limit Fixed by G. L. 6452 Unnecessary—Right of Jury to Disbelieve Testimony of Witness.*

1.   While right to trial before an impartial jury is guaranteed by the Constitution of Vermont, Ch. I, Art. 10, and such right, under Art. 12, is to be held sacred, the term "sacred" as thus used means no more than the word "inviolate," and does not mean that the mode of listing and selecting jurors shall forever remain unchanged, but only that the right shall be free from

destruction or material impairment, hence the Legislature has full authority to make reasonable laws regulating mode in which right shall be enjoyed, providing the right is not thereby materially impaired.

2. Method of securing jurors, provided by G. L. 1652, *held* not to give the officer too wide a latitude in selecting names.

3. A liberal, though not unlimited opportunity to examine jurors drawn, to test and consider their respective qualifications, and to assert and exercise the right of challenge given by statute, is essential to the full enjoyment of respondent's constitutional right to a jury trial.

4. G. L. 1652, providing method of selecting jurors, *held* neither expressly nor by implication to deny respondent opportunity to exercise right of challenge given by statute.

5. In the absence of a record to the contrary, by the presumption of regularity it will be taken that respondent has been accorded opportunity to exercise right of challenge of jurors drawn.

6. G. L. 1652, providing method of selecting jurors, does not require that right of challenge be exercised at the very time a juror's name is drawn.

7. Evidence *held* to fairly and reasonably show that small quantity of liquid found in certain cans discovered on respondent's premises was alcohol, and to warrant the inference that the cans had been used to contain alcohol.

8. Where evidence showed that liquid in cans found on respondent's premises was alcohol, evidence that the alcoholic content of such liquid exceeded the limit fixed by G. L. 6452 was unnecessary, since it is a matter of common knowledge of which courts will take judicial notice, that alcohol is the intoxicating principle of all intoxicating liquors, and, being the standard by which the quality of other liquors is tested, no proof of its quality is required.

9. In a prosecution for illegal possession of intoxicating liquor, where respondent's thirteen year old son testified that he had found certain cans, subsequently discovered on respondent's premises, containing a small quantity of alcohol, and carried them home with the intention of selling them to a certain paint shop, it was not error to deny respondent's motion for a directed verdict on ground that quantity of alcohol was too small to be used for beverage purposes, and that testimony of boy would prevent a conviction, because jury was not bound

to believe the boy but could legitimately infer that cans belonged to respondent and had been used by him to contain alcohol.

COMPLAINT for unlawful possession of intoxicating liquor. Plea, not guilty. Trial by jury in the Burlington city court, *Clarence P. Cowles,* City Judge. Verdict and judgment of guilty. The respondent excepted. The opinion states the case. *No error.*

*J. A. McNamara* for the respondent.

*A. Pearley Feen,* city grand juror, for the State.

POWERS, J. This respondent, who was convicted in the Burlington city court of the illegal possession of intoxicating liquor, says that his conviction should be set aside because he was denied the full benefit of his constitutional right to a trial by jury.

[1] While the right to a trial before an impartial jury is guaranteed by the organic law (Const. Vt. Ch. I, Art. 10), and while this right is to be held sacred, (*Ibid,* Art. 12), and is to be given effect according to the course of the common law (*Plimpton* v. *Somerset,* 33 Vt. 283), it does not follow that no change in the procedural requirements by which the enjoyment of this right is secured can be made without impairing the right. The term "sacred" as used in the Constitution means no more than the word "inviolate," which is found in the fundamental law of some of the states. It does not mean that the mode of listing and selecting the jurors shall forever remain unchanged. *Clayton* v. *Clark,* 55 N. J. Law, 539, 26 Atl. 795; *People* v. *Peete,* 54 Cal. App. 333, 202 Pac. 51. It only means that the right itself shall be free from destruction or material impairment. *Humphrey* v. *Eakeley,* 72 N. J. Law, 424, 60 Atl. 1097, 5 Ann. Cas. 929; *State* v. *DeLorenzo,* 81 N. J. Law, 613, 79 Atl. 839, Ann. Cas. 1912D, 329.

Hence it is, that the Legislature has full authority to make reasonable laws regulating the mode in which the right shall be enjoyed, provided it does not materially impair the right itself. *In re Marron,* 60 Vt. 199, 12 Atl. 523.

The jury by which this respondent was found guilty consisted of twelve men selected and drawn in conformity to the provision

of the statute, G. L. 1652.   It is therein provided that the sheriff,
a deputy sheriff, or other officer appointed by the court, shall
select from the list of three hundred judicious men which the
judge is required by G. L. 1651 to keep on file, the names of
twenty-four persons from the towns designated by the judge;
write each name on a separate slip of paper, and deposit the
same in a proper receptacle.   The judge or clerk is then to
draw the names therefrom, one at a time, and the person whose
name is so drawn, unless challenged, shall be a juror.   Each
party is given six peremptory challenges and the right to an
unlimited number of challenges for cause.

[2-5]   The respondent insists that this method of securing
the jury gives the officer too wide a latitude in selecting the
names, and cites *State* v. *Peterson,* 41 Vt. 504, to sustain him.
It is true that in that case Judge Wilson, *arguendo,* indulges in
some animadversions on the method of drawing jurors in justice
courts.   They were wholly outside the necessities of the case.
It was enough for the decision to hold that the respondent was
entitled to a jury of twelve men.   The criticism, then, was en-
tirely *obiter;* and it is apparent that it was not taken very seri-
ously, for, so far as the criticism went, we have gone on for the
more than fifty years that have since elapsed, drawing juries in
justice courts in exactly the same way.   G. L. 1686.

The statute above referred to was recently before us in
*State* v. *Pilver,* 91 Vt. 310, 100 Atl. 674, and we therein dis-
cussed questions somewhat cognate to the one here presented,
and that case may be profitably considered in this connection.

But the respondent says that the statute gave him no ade-
quate opportunity to exercise his right of challenge, which, he in-
sists, is an essential element of his right to a jury trial.   That a
respondent must be accorded such an opportunity is undoubted.
Without it, he is not given the full benefit of his constitutional
right.   A liberal, though not unlimited opportunity to examine
the jurors drawn (*State* v. *Bosworth,* 86 Vt. 71, 83 Atl. 657),
to test and consider their respective qualifications, to assert and
exercise the right of challenge given him by the statute, is, no
doubt, essential to the full enjoyment of a respondent's right to
a jury trial.   But there is nothing in the statute under consider-
ation that expressly or by implication denies such an opportun-
ity; nor does the record show that the proceedings below were
so conducted as to deprive this respondent of it.   Indulging the

presumption of regularity, as we must, it is to be taken that he was accorded it.

[6]	The respondent's brief indicates that it may have been ruled below that the right of challenge was to be exercised at the very time a juror's name was drawn. Though the record does not show that this was so, we take occasion to say that such a construction of the statute would be quite too narrow and wholly unwarranted.

[7]	The other questions presented can be quickly disposed of. The evidence tended to show that a small quantity of liquid was found in certain gallon cans which were discovered when the respondent's premises were searched under a warrant. Witnesses testified that this liquid smelled like alcohol and appeared to be alcohol. The jurors were allowed to smell of the cans. This evidence fairly and reasonably tended to show that the liquid recovered from the cans was, in fact, alcohol (*State* v. *O'Grady,* 65 Vt. 66, 25 Atl. 905; *Haines* v. *Hanrahan,* 105 Mass. 480), and warranted the inference that the cans had been used to keep alcohol in. *State* v. *O'Grady, supra; State* v. *Krinski,* 78 Vt. 162, 62 Atl. 37; *State* v. *Suiter,* 78 Vt. 391, 63 Atl. 182; *State* v. *Legendre,* 89 Vt. 526, 96 Atl. 9.

[8]	If the liquid was alcohol, it was wholly unnecessary to give evidence that its alcoholic content exceeded the limit fixed by G. L. 6452. Alcohol is, itself, the intoxicating principle of all intoxicating liquors. This is a matter of common knowledge of which courts take judicial notice. *Snider* v. *State,* 81 Ga. 753, 7 S. E. 631, 12 A. S. R. 350. Being the standard by which the quality of other liquors is tested, no proof of its quality is required. Its strength, to be sure, varies somewhat according to the degree of perfection of its distillation, but so long as it is alcohol, it necessarily contains a great many times the prohibited percentage of itself. Any liquid that did not contain such an amount of alcohol, could not be alcohol. Of this self-evident fact, courts require no proof. See *Albert* v. *United States* (C. C. A.) 281 Fed. 511, wherein it is held that judicial notice will be taken of the fact that whiskey contains many times one-half of one per cent. of alcohol.

[9]	The only evidence in defense was the testimony of the respondent's son, a boy thirteen years of age, who said that he found the cans on the city dump, and that he carried them home with the intention of selling them at a certain paint shop. At

the close of the evidence, the respondent moved for a verdict on the ground that the quantity of alcohol actually found being too small to be used for beverage purposes, the testimony of the boy would prevent a conviction. But the jury was not bound to believe the boy. It is apparent that it did not. It was quite within the legitimate inferences to be drawn from the evidence that the cans belonged to the respondent and had been used by him as above suggested. It is not at all probable that the conviction was based upon the small quantity of alcohol recovered by the officers; but rather on account of the alcohol that the jury was convinced the respondent had previously kept in the cans—of which the cans, the alcohol, and the odor, as we have seen, afforded evidence.

*Judgment that there is no error in the proceedings and that the respondent takes nothing by his exceptions. Let execution be done.*