STATE *v.* MICHAEL DROPOLSKI.

January Term, 1927.

Present: WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed April 8, 1927.

*Intoxicating Liquor—Presumptions as to Possession and Owner-*
*ship—Sufficiency of Evidence To Justify Jury's Inference*
*of Possession and Ownership—Acts and Conduct of Accused*
*Respecting Liquor Found—Motion in Arrest of Judgment—*
*Misuse of Word "Counts" in Instructions—Evidence of*
*Search of Other Premises under Separate Ownership, Con-*
*trol, Occupancy, and Management—Declarations Not Part of*
*Res Gestae—Respondent's Request to Searching Officer To*
*Be Appraised of Contents of Can Containing Alcohol Inad-*
*missible—Searches and Seizures—Effect of Absence of*
*Respondent During Search—Presumption as to Acts and*
*Conduct of Respondent's Wife Being with His Knowledge*
*and Consent—Cross-examination.*

1.  Finding liquor in house over which respondent had control
    creates rebuttable presumption that possession was his.
2.  Where husband and wife reside together, there is a rebuttable
    presumption that intoxicating liquor in house belongs to
    husband.
3.  In prosecution for unlawful possession of intoxicating liquor, evi-
    dence that officer making search of respondent's residence
    under authority of search warrant found under a burlap bag
    on porch thereof a can containing alcohol, together with evi-
    dence as to respondent's acts and doings, and legal presump-
    tions, *held* to justify jury in inferring that can and alcohol
    therein were respondent's property and in his possession.
4.  In prosecution for unlawful possession of intoxicating liquor, evi-
    dence that when respondent's residence in second story of
    building was being searched under authority of search war-
    rant, respondent went through window onto a roof at back of
    building and threw therefrom several bottles, and that some
    other bottles on roof tipped over and stream ran therefrom
    which smelled of alcohol, *held* sufficient to submit case to jury.

5. Motion in arrest of judgment, where record, while showing that it was filed on day of trial, failed to show that filing was after verdict and before judgment, *held* properly overruled.

6. In prosecution for unlawful possession of intoxicating liquor, where complaint was in one count, instruction that if respondent possessed intoxicating liquor, either in can (found on porch of his residence) or outside window, where roof was, jury could convict "on either one of these counts," or find him guilty on one and not guilty on other, or find him not guilty, though court misused word "counts," *held* not prejudicial in view of what court said in connection with its use, which was so specific as to leave no reasonable doubt in minds of jurors as to its intended meaning.

7. In prosecution for unlawful possession of intoxicating liquor, evidence that officers, immediately prior to their appearance and search of respondent's premises, had searched certain other premises owned by another person, for a like purpose, claimed to be admissible to show similarity of two situations and to substantiate respondent's claim of non-ownership, non-possession, and lack of knowledge of can of alcohol found on porch of respondent's residence, *held* properly excluded, where two places were entirely separate in ownership, control, occupancy, and management, such evidence being immaterial.

8. In prosecution for unlawful possession of intoxicating liquor, question on cross-examination of witnesses for State as to whether respondent had not inquired a couple of days after they had searched premises, where they found liquor, offered as part of *res gestae*, *held* properly excluded because not contemporaneous with principal fact or declaration.

9. In prosecution for unlawful possession of intoxicating liquor, evidence that when one of officers making search of respondent's premises found can thereon and showed respondent there was something in it, respondent made inquiry as to what was in can, and wanted officer to see what was in it, and to show him what it was, offered to show respondent's lack of knowledge of can and contents, *held* properly excluded, since officer was not required to comply with request, being satisfied from previous examination that can contained alcohol, as was later shown by chemical analysis.

10. Occupant of premises authorized by a proper search warrant to be searched, cannot avoid effect of warrant by his absence from premises when it is executed.

11. In prosecution for unlawful possession of intoxicating liquor, conduct of respondent's wife, after being informed by him that officers were searching premises for intoxicating liquor, whether in respondent's presence or otherwise, is presumed to have been with his knowledge and authority.

12. In prosecution for unlawful possession of intoxicating liquor, question asked officer who searched premises, on cross-examination, if there was any one fact witness could point to and tell jury and court that respondent had actual possession or knowledge of can containing intoxicating liquor, found on porch of respondent's residence, *held* properly excluded, it being for jury to say, under proper instructions, whether respondent had possession of can, and to determine matter on all evidence and rebuttable presumptions in case.

INFORMATION for unlawful possession of intoxicating liquor. Plea, not guilty. Trial by jury in Rutland city court, *C. H. Kinney*, City Judge, presiding. Verdict of guilty and judgment thereon. The respondent excepted. The opinion states the case. *No error.*

*Lawrence, Stafford & Bloomer* for the respondent.

*Lawrence C. Jones*, State's attorney, for the State.

WATSON, C. J.    The complaint in one count charges the respondent with the unlawful possession of intoxicating liquor at West Rutland, on the 21st day of November, 1925. Respondent pleaded not guilty. A trial was had by jury in the Rutland city court on January 2, 1926, resulting in a verdict of guilty.

It appears that before and on the day in question the respondent was the owner of record of a certain building situated on the east side of Main Street in West Rutland; that the rear portion of the first floor of the building he used for a pool room, and in front of that room was a room in which he sold cigars and soft drinks; while the second floor (upstairs), he occupied as his residence, access thereto being by way of an outside stairway on the south side of the building, there being no connection from the pool room or cigar room to the rooms of his residence; that at the top of those stairs is a small piazza or porch, some five or six feet wide, from which one entering the house first

goes into the dining room, and from that room one turns to the right to go into the kitchen; that in the night time of the day above mentioned, P. H. Patten, Almo Franzoni, David A. Barker, and Edward Bartlett, all deputy sheriffs in and for the county of Rutland, armed with a warrant for search and seizure,—the sufficiency of which is not challenged,—went to respondent's said premises for the purpose of searching the same for intoxicating liquor, and seizing such liquors if any they should find in making the search.

It appeared that on the back side of the building and connected with it there was a sloping roof, covered with tar paper, to which roof there was a ladder leading from the ground in the rear of the building, and respondent could go from his pool room through a back door to this roof by using the ladder; that that roof was perhaps ten feet square, and had a foot and half drop, and two windows from the kitchen opened out onto it.

The State's evidence tended to show that in making the search officer Bartlett found under a burlap bag on the porch at the top of the stairs a gallon can containing alcohol. Bartlett having testified to the finding of said can with such contents at the place named, further testified that he then went into the kitchen; that the respondent at that time was in the kitchen, also his wife, and the three other officers; that Mrs. Dropolski was over near the sink, standing opposite one of the windows, and respondent was there; that when the witness came in he told the officers to look out for the roof, thinking there was something on it; that the respondent's wife, going to this window, started to scream, whereupon the witness went over to the other window to open it, and getting it part down, the respondent came over on a rush, hit the witness with his shoulder shoving him one side, went out on the roof, the witness following him out; that when the witness got on the roof, the respondent went over to the other window, picked up a couple of bottles and threw them off; that he then started to go down the ladder from the roof to the ground, and when down three or four steps, was ordered to come back by officer Franzoni who was also on the roof; that respondent came back and was placed under arrest and taken by officer Patten down to an automobile nearby; that in the vicinity of the window which respondent's wife opened, there were some bottles tipped over and a stream running down from them off the roof; that the stream was discernible on the

roof by dampness there; that there was no rain that night, and the rest of the roof was dry; that the witness put his hands in the stream running off the roof, and he was positive they smelled of alcohol; that there were some other pint and half-pint bottles there, but witness did not count them; that no filled bottles were then there, but in the immediate vicinity of where the stream of dampness went down from near the window, there were two bottles so tipped down on the roof that the neck of them pointed down with the slope of the roof; that the stream on the roof led the witness to the mouth of those bottles but he did not take them.

Bartlett was alone when he found the can on the porch. In respect to the contents of the can, and as to what took place in the kitchen and on the roof out of the kitchen windows, including the actions of the respondent and his wife, the testimony of Bartlett, as related above, was corroborated in its essential particulars by the testimony of the other officers.

It appeared from the State's evidence that within two weeks after the search and seizure in question, the State's attorney of the county caused a sample of the contents of the can found on the porch and seized as already stated to be analyzed at the Vermont State Laboratory of Hygiene, which analysis showed forty-four and a half per cent. ethel (grain) alcohol by volume at sixty degrees, the rest being water. The sample so analyzed and the can were properly put in evidence at the trial and made exhibits in the case.

The respondent, being a witness in his own behalf, testified in chief that at the time of the search he had cans like the one found by the officer on the porch, which he used for turpentine or gasoline in connection with his painting business; but that he did not at any time have anything to do with the can so found by the officers, and did not have any intoxicating liquor at his house that night. "Q. Did you ever see this can up there on the porch, this can with alcohol in it, or any intoxicating liquor in it, up there on your porch? A. No. I see can over there, I didn't look in, what was in it. Q. You know whether this can? A. No, I can't tell, was gallon can. Q. When did you see that? A. Day or two before, it was plain.....Q. Did you put this can or know of anybody putting this can out there under bran sack or burlap? A. No."

[1, 2]   "Finding liquor in house over which respondent had control creates a rebuttable presumption that the possession was his." *State* v. *Kichinko,* 122 Wash. 251, 210 Pac. 364; *Autrey* v. *State,* 18 Ga. App. 13, 88 S. E. 715; *People* v. *McLean,* 210 Mich. 650, 178 N. W. 85; *State* v. *Counts,* 90 W. Va. 338, 110 S. E. 812.   And, where husband and wife reside together, there is a like presumption that the intoxicating liquor in the house belongs to the husband. *Isom* v. *State,* 32 Ga. App. 75, 122 S. E. 722; *People* v. *Lange,* 224 Mich. 5, 194 N. W. 496; Thorpe, Prohibition, § 402.   In *State* v. *Kamuda,* 98 Vt. 466, 129 Atl. 306, we stated as a general proposition "that possession alone of personal property is presumptive evidence of ownership, and with nothing to oppose it is sufficient; * * * and where the joint possession is that of husband and wife, the presumption of ownership is in favor of the husband."

[3, 4]   Respondent says there was no evidence that he had the alcohol in the can found in the porch, or knew of its presence there, exercised any dominion over it, or in any way was the owner or possessor; that there was no act or word on his part whereby ownership or possession could be predicated.   But we think from the evidence to which attention has been called, including his acts and doings, also including the legal presumptions noticed above, that the jury might fairly and reasonably infer that the can and the alcohol in it were his property and in his possession. *State* v. *Mercier,* 98 Vt. 368, 127 Atl. 715.   See *State* v. *Brewster,* 7 Vt. 118.   The same inference might well be drawn from the evidence concerning the alcohol which the State's evidence tended to show was emptied from the bottles on the roof, and the evidence was sufficient to submit to the jury on that branch of the case.

[5]   Respondent argues that his motion to set aside the verdict and in arrest of judgment should have been granted. The argument is presented as to the latter aspect only.   The record shows that the motion was filed on January 2, 1926, the day of the trial, but it does not show that it was after verdict and before judgment.   Naught appearing to the contrary, it may not have been until after judgment and for that reason overruled. Such a motion made after judgment is inapplicable and raises no question. *State* v. *Kibling,* 63 Vt. 636, 22 Atl. 613; *State* v. *O'Neil,* 66 Vt. 356, 29 Atl. 376.

[6]   The court instructed the jury that if the respondent possessed intoxicating liquor, "either in the can or outside the

window there, where the roof was," they could find him guilty "on either one of these counts," or they could find him guilty on one and not guilty on the other, or they could find him not guilty; that if they found him guilty of either one, their verdict should be guilty; but if they found him not guilty of either, their verdict should be not guilty. A general exception was saved that the court had divided "this into counts" and there was no evidence to substantiate either count. While it is true that the court misused the word "counts," what was said in connection with the use there made of it was so specific as to leave no reasonable doubt in the minds of the jurors as to its intended meaning and the respondent was not harmed thereby. From what we have already said, it is seen that there was evidence tending to substantiate the claim of the State in both respects.

[7]  The evidence offered by respondent to show that the officers, immediately prior to their appearance at and search of respondent's premises, searched certain other premises owned by another person, for a like purpose, was properly excluded. Even though both places were searched by the same officers in making the same general trip, the two, so far as the records show, were entirely separate in ownership, control, occupancy, and management; consequently what happened at the place visited by the officers before searching the respondent's premises, was immaterial to any question in issue in the prosecution growing out of the latter. *Calliguiri* v. *Marro,* 93 Vt. 186, 106 Atl. 780. Respondent says in his brief that he desired to show the similarity of the two situations to substantiate his claim of non-ownership, non-possession, and lack of knowledge of the can of alcohol. Viewed in this light, a question is presented somewhat similar in principle to that ruled in *Clark, Admr.* v. *Smith and Hays,* 72 Vt. 138, 47 Atl. 391, and in *McGovern* v. *Smith and Hays,* 73 Vt. 52, 50 Atl. 549. In the former case it was held that how a train was managed at a particular station, had no tendency to show how it was managed at the station in question. A like ruling in principle was had in the latter case. In both cases, it was held to be collateral matter.

[8, 9]  Respondent says his conduct, inquiries, and attitude with respect to the can and its discovery should have been received in evidence. Officer Bartlett, one of the State's witnesses, testified in cross-examination that respondent acted quite exercised and excited about the situation. The witness was then

asked whether respondent was so excited and exercised that he wanted to ask him (witness) some questions about it. Witness answered, "At what time, that same night?" "Q. No, couple of days afterwards and when he (under bail on this complaint) got back from Rutland he called you up and wanted to know where they found that stuff, didn't he?" This question was objected to as immaterial, and called for self-serving declarations. Whereupon counsel for respondent said the declarations called for were part of the *res gestae.* But they did not fall within that class of admissible declarations, for they were not contemporaneous with the principal fact or transaction. *State* v. *Ryder,* 80 Vt. 422, 68 Atl. 652; *State* v. *Carlton,* 48 Vt. 636; *State* v. *Wood,* 53 Vt. 560. It is said, however, that officer Bartlett, having shook the can and showed respondent there was something in it, the latter offered to show that he knew nothing about the situation and that when this subject-matter was first called to his attention right then and there and as part and parcel of the situation and the circumstances, he made some inquiry about it, he wanted to see what was in the can and wanted the officers themselves to see what was in it and to show him what there was, and that he at that time requested them to do so. Objection being made to the offer, the court ruled that respondent might show "he didn't know that was there." But could not show it by asking respondent what he said to Bartlett about it, saving an exception. Respondent then testified without objection that he asked the officer to show him what was in the can, and that the officer "shook it like that," but did not take the top off and show respondent. The bite of respondent's position taken under exception is that the officer did not as requested take off the top of the can to show respondent what was in it, nor did they themselves then and there examine the contents of the can to determine what they were. Respondent's contention in this respect is unsound. There is no rule of law entitling him to a compliance, then and there, with his said request. The officer who found the can, and one or more of the others, had already taken the top off and satisfied themselves that the can contained alcohol, as was later found by analysis at the State Laboratory. This exception is without merit.

It is urged that happenings in the kitchen when respondent was not present were inadmissible. Such happenings were re-

ceived in evidence on the assurance by the State that respondent would be connected therewith.

[10]    On the arrival of the four officers at respondent's buildings, two of them (Bartlett and Franzoni) went into the cigar room on the first floor and the other two (Patten and Barker) went upstairs into the rooms of respondent's residence. When testifying in chief, respondent said that at the time when the officers arrived he was outside the building, and on going into the cigar room he found two of them behind the counter; that seeing them there and being told by them that they were looking for intoxicating liquor, he went up stairs to tell his wife they were searching his place; that he found up there the other two officers; that he then went back down to the pool room, but went up stairs again later, after officer Franzoni went up and before officer Bartlett followed. Some of the exceptions seem to be based on the hypothesis that such search and seizures could lawfully be made only in the presence of the respondent. This position is unsound in law. The occupant of premises authorized by a proper warrant to be searched, cannot avoid the effect of the warrant by his absence from the premises when it is executed. Thorpe, Prohibition, § 809; *U. S.* v. *Camarota* (D. C.), 278 Fed. 388; *People* v. *Lange,* cited above.

[11]    Whether the acts of respondent's wife when the search was being made in the rooms of their residence, not in the presence of her husband, were evidence against him, we do not consider; for the record shows nothing that she did having material evidentiary force, before he went up stairs to tell her the officers were searching the premises. Whatever she did after that, whether in his presence or otherwise, might readily be supposed to have been with his knowledge and authority. *State* v. *Kamuda,* noticed above. ''An agency or assent may be, and often is, more readily presumed from the acts and condition of a wife, than in ordinary cases.'' *Shelton* v. *Pendleton,* 18 Conn. 417, 421.

[12]    In cross-examining officer Franzoni, respondent's attorney asked him if there was any one fact he (witness) could point to and tell the jury and the court the respondent had actual possession of that can (found on porch at head of stairs) or knew anything about it. The court excluded the question, saying it was for the jury to say whether or not respondent had possession of the can. Exception was saved.

The exclusion of the question was without error. Not only was it for the jury to say, under proper instructions from the court, whether the respondent had possession of the can, but to say so, not on any one fact known to the witness, but on all the evidence and rebuttable presumptions in the case, touching that question.

*Judgment that there was no error in the proceedings, and that the respondent takes nothing by his exceptions. Let execution be done.*