RESIDENTS OF ROYALTON ET AL. *v.* CENTRAL VERMONT RAILWAY CO.

May Term, 1927.

Present: WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed October 5, 1927.

*Public Service Commission—Right of Amendment of Date of Order—Necessity of Record Showing Appeal—G. L. 5050—Jurisdiction—Ruling of Commission May Be Sustained on Ground Not Raised Below—Manner of Saving Exceptions in Trials before Chancellor—Parol Evidence of Contents of Letter—Immaterial Evidence—Principal and Agent—Declarations of Agent–Necessity of Making Offer of What Is Expected To Be Shown—Improper Cross-examination—Harmless Error—Sufficiency of Unchallenged Findings To Sustain Judgment—Facts To Be Considered in Determining Kind of Service to Which Patrons of Railroad Entitled —Provisions of G. L. 5231 as to Reasonable and Equal Accommodations for Transportation Construed—Presumption on Appeal as to Use of Evidence by Public Service Commission—Exceptions To Failure To Make Findings.*

1. After appeal from order of Public Service Commission was dismissed on motion because it appeared from record then before Supreme Court that appeal had not been filed within 30 days from date of order, on appellant's claim that order was errone-

ously dated and request to have it amended, Commission had right to amend order so as to make date thereof conform to the facts.

2. Supreme Court will not consider claimed error of Public Service Commission in amending date of order appealed from by petitioner to conform to the facts, where record discloses nothing concerning appeal by petitionees from action of Commission in allowing amendment, or nothing concerning finding of Commission, if any, regarding alleged error.

3. G. L. 5050, relating to jurisdiction of Public Service Commission, is broad enough to include questions arising under G. L. 5231, and gives Commission jurisdiction of subject-matter of petition to restrain railroad from substituting caretaker service for agency service at a station.

4. Ruling of Public Service Commission will be sustained if it can be done on any legal ground, though not raised below, contrary to rule where reversal is sought on grounds not raised below.

5. Exceptions to admission or rejection of evidence in trials before Public Service Commission must be saved in manner prescribed by G. L. 1511, but will be unavailing unless case is properly in Supreme Court on appeal perfected in manner provided by G. L. 1561.

6. Where offer of evidence was in effect to show by parol contents of letter, without accounting for non-production of letter, exclusion of evidence was without error.

7. Where offer of evidence failed to show that incident to which it related occurred at such time as to make evidence material; evidence was properly excluded.

8. Statements of employee of railroad about duties of caretaker at station, *held* inadmissible against employer until his authority to speak concerning matter was established.

9. Authority of employee of railroad to speak about duties of fellow employee cannot be established by his own declarations.

10. Where no offer was made as to what party seeking admission of evidence expected to show, exception to exclusion of evidence was unavailing.

11. In proceeding before Public Service Commission on petition to restrain railroad from substituting caretaker service for agency service at station, inquiry from witness who had testified as to amount of business done at station in question, and

that purpose of proposed change was to save money, as to whether railroad could save money by putting caretaker at another station, *held* properly excluded as not being proper cross-examination, since inquiry related to matter wholly collateral to any issue before Commission.

12. Error in admission of evidence, if any, *held* to have been rendered harmless, where same witness was subsequently permitted to testify, without objection, to substantially same thing.

13. Admission of certain pages of report, prepared by witness after special study of revenues, expenses, and general financial conditions at railroad station where it was proposed to substitute caretaker service for agency service, containing explanation of attached schedules and reasons for proposed change in service, although improper, *held* harmless where substance thereof was testified to by witness, without objection, and was undisputed.

14. In proceeding before Public Service Commission on petition to restrain railroad from substituting caretaker service for agency service at station, *held* that whether exceptions saved to certain findings would be considered by Supreme Court depended upon whether unchallenged findings were sufficient to support Commission's judgment, since if they were, judgment would be affirmed, unless reversal was required for other reasons.

15. Order of Public Service Commission, dismissing petition to restrain railroad from substituting caretaker service for agency service at station, *held* sustained by its unchallenged findings.

16. Kind of service to which patrons of railroad station are entitled does not depend alone upon convenience of such patrons, or fact that such station is self-supporting financially, but of equal importance in determining this question is volume of business done at such station, its proximity to other stations, accessibility of latter, cost of furnishing such service, etc.

17. Provisions of G. L. 5231 requiring that railroad must give reasonable and equal facilities and accommodations for transportation, *held* not to intend an arbitrary rule of absolute equality, but to mean no more than that each class shall be furnished such facilities and accommodations as amount and character of its business reasonably and justly demand.

18. It is assumed on appeal that Public Service Commission made proper use of evidence before it for all legitimate purposes,

and statement in its findings that curtailment of railroad's liability as bailee of less than car lots of freight, by reason of proposed substitution of caretaker service of agency service at station, did not amount to substantial reduction of accommodations furnished within purview of G. L. 5215, did not warrant inference that evidence was not so considered.

19. Exceptions to failure of Public Service Commission to make certain findings will be overruled, where record fails to show any requests for such findings.

APPEAL from order of Public Service Commission, dismissing petition of Residents of Royalton and vicinity to restrain the Central Vermont Railway Co., from substituting caretaker service in lieu of existing agency service at its Royalton station. The petitioner appeals.  The opinion states the case.  *Affirmed.*

*George L. Hunt* and *John F. Neal* of counsel for the petitioner.

*Robert R. Twitchell,* State's attorney, for the State.

*John W. Redmond* and *Horace H. Powers* for the petitionee.

SLACK, J.  This is an appeal from an order of the Public Service Commission dismissing a petition brought by citizens of Royalton and vicinity seeking to restrain petitionee from substituting caretaker service in lieu of the present agency service at its Royalton station.  The order is predicated on facts found and stated by the Commission.

[1, 2]  It appeared from the record first before us that petitioners' motion for an appeal was not filed within twenty days from the date of the Commission's order and at the January Term, 1927, the appeal, on motion of petitionee, was ordered dismissed.  Thereupon petitioners, claiming that the order appealed from was erroneously dated, asked and had leave to have the same amended, and the case was entered with the Court. An amended order was filed February 21, 1927, which is dated August 31, 1926, instead of August 27, 1926, the date of the original order.  Reckoning from the date of the amended order petitioners' motion for appeal was seasonably filed.  That the Commission had authority to amend its order to conform to the facts cannot be doubted.  *Castonquay* v. *Grand Trunk Railway*

*Co.,* 91 Vt. 371, 100 Atl. 908, although an action at law, is authority for this. The petitionee, contends, however, that the findings of the Commission respecting this matter do not disclose error in the original order which the Commission had power to correct, and says in its brief that it seasonably appealed from the action of the Commission in holding otherwise. But the record before us, which determines the questions for review, discloses nothing concerning such appeal, or the finding of the Commission, if any, regarding the alleged error. For aught that appears the amendment was properly made, and if so petitioners' motion for appeal was filed within the time prescribed by statute.

[3, 4] The petitionee contends that the Commission did not have jurisdiction of the subject-matter of the petition and therefore that the order dismissing it should be sustained. The petitioners insist that the Commission had jurisdiction under both G. L. 5050 and G. L. 5231. The former section so far as here material reads as follows: "Said Commission shall have jurisdiction on due notice to hear, determine, render judgment, and make orders and decrees in all matters provided for in the charter of any railroad corporation, or in the statutes of this state relating to railroads, and shall have like jurisdiction in all matters respecting; * * * IX. The manner of operating railroads and conducting the business thereof so as to be reasonable and expedient and to promote the security, convenience and accommodation of the public and to prevent violations of law and unjust discriminations, usurpations or extortions." G. L. 5231 reads as follows: "A person or corporation operating a railroad shall give to all persons reasonable and equal terms, benefits, facilities and accommodations for the transportation of themselves, their agents and servants, and of merchandise and other property, upon such railroad, and for the use of the depots, buildings and grounds thereof, and, at any point where such railroad connects with another railroad, reasonable and equal facilities of interchange." We doubt not that subdivision IX of section 5050 gives the Commission jurisdiction of the subject-matter, here involved. And it seems equally clear that the provision of that section which gives the Commission jurisdiction in all matters provided for "in the statutes of this state relating to railroads" is broad enough to include questions arising under G. L. 5231. The petitionee insists that the question of whether the Commission had jurisdiction of the subject-matter of the

petition under the provisions of the statutes last referred to is not for consideration here because not raised before the Commission. Assuming the fact to be as claimed, the ruling of the Commission will be sustained if it can be done on any legal ground (*Goupiel* v. *Grand Trunk Ry. Co.,* 94 Vt. 337, 111 Atl. 346), although the rule is as claimed by petitionee where a reversal is sought on grounds not raised below. *Wood* v. *James,* 93 Vt. 36, 106 Atl. 566.

[5] In the trial before the Commission the petitioners excepted to the exclusion of evidence offered by them and to the admission of evidence offered by petitionee. The petitionee insists that these exceptions are not before this Court because not saved in the manner provided by G. L. 1520, and cites *Vermont Marble Company* v. *Eastman et al.,* 91 Vt. 425, 101 Atl. 151, and *Rowley* v. *Shepardson,* 90 Vt. 25, 96 Atl. 374 (to which might have been added *Osha* v. *Higgins,* 90 Vt. 130, 96 Atl. 70, and *Barber* v. *Bailey,* 86 Vt. 219, 84 Atl. 608, 44 L. R. A. [N. S.] 98), in support of this claim. The manner of saving exceptions to the admission or rejection of evidence in trials before a chancellor has been changed since those cases were decided. See G. L. 1511, the last sentence of which provides: ''Exceptions taken on trial of controverted questions of fact before a chancellor shall be available on appeal in the same manner as in county court causes tried by the court.'' The effect of this statute was pointed out in *Essex Storage Electric Co.* v. *Victory Lumber Co.,* 93 Vt. 437, 108 Atl. 426. And in *Gray et al.* v. *Brattleboro Trust Co.,* 97 Vt. 270, 122 Atl. 670, it was held that the method prescribed by the latter statute for saving exceptions in trials before a chancellor is exclusive. But it should be noted that, exceptions so saved will be unavailing unless the case is properly here on appeal perfected in the manner provided by G. L. 1561. *United States of America* v. *Cano et ux.,* 100 Vt. 111, 135 Atl. 1. We think these exceptions were properly saved.

[6, 7] On the direct examination of one Toomey, petitionee's station agent at Royalton, petitioners offered to show that the witness received a letter from some one in which the writer said, in effect, that he wanted to ship lumber from the Royalton station and complained that the condition of the freight yard crossing was such that he could not do so and asked the witness to take the matter up with the petitionee; that the witness did so but that the petitionee did nothing about it, and the ship-

ment went elsewhere. This was excluded, subject to petitioners' exception. The offer in part was, in effect, to show by parol the contents of a letter which evidenced the foundation of what was claimed to have occurred after its receipt by the witness without accounting for the non-production of such letter. Then, too, for aught that appeared from the offer the incident might have occurred in the early part of the witness' service as such agent, which it had already appeared covered a period of eleven years, and if so it was clearly immaterial to any issue before the Commission. The exception is without merit.

[8-10] The same witness, after testifying in direct examination that he had had a talk with one Thresher, who he knew was in the employ of petitionee, and he thought was its traveling agent, about the duties of a caretaker at the Royalton station, was asked to tell what Thresher said about such duties, and also what he said as to why he approached the witness about the matter. This was excluded, to which petitioners excepted. What Thresher said about the duties of a caretaker was inadmissible until his authority to speak concerning that matter was established, which could not be done by his own declarations, and we find no other evidence tending to show such authority. Moreover no offer was made as to what petitioners expected to show, without which the exception is unavailing. *Capital Garage Co.* v. *Powell*, 99 Vt. 244, 131 Atl. 10.

[11] Edwin Deschenes, who it appeared was petitionee's comptroller, and had been in charge of its accounting department for about thirteen years, was called as a witness by petitionee, and after testifying in detail to the amount of business, both passenger and freight, done at the Royalton station in 1925, and to the proposed change in service at that point, and that the purpose of such change was to save money, was asked on cross-examination: "Q. Couldn't you save money by putting a caretaker in at Randolph and let him handle the $4,800 express and do the accounting at Bethel?" This was objected to, and excluded subject to petitioners' exception. This was not proper cross-examination since the inquiry related to a matter wholly collateral to any issue before the Commission. That a saving could be made at some other station by a change similar to that proposed had no bearing whatever on the question of whether such change was justified in the instant case. A question somewhat similar in principle was before the Court in *State* v.

*Dropolski,* 100 Vt. 259, 136 Atl. 835, *McGovern* v. *Smith and Hays,* 73 Vt. 52, 50 Atl. 549, and *Clark, Admr.* v. *Smith and Hays,* 72 Vt. 138, 47 Atl. 391, and it was held in each instance that the evidence was incompetent.

[12]    The same witness was permitted to testify, subject to the objection that it did not appear that he was qualified to give evidence concerning the subject-matter, that "carload shippers" would not be inconvenienced at all by the proposed change in service, and to state the reasons why. Whether admissible or not, this evidence was rendered harmless by the witness later testifying, without objection, to substantially the same thing. *Murray* v. *Nelson,* 97 Vt. 101, 108, 122 Atl. 519, and cases there collected.

[13]    The same witness testified in direct examination that he had made a special study of the revenues, expenses, and general financial conditions at the Royalton station, and had prepared a report showing the amount of business done there, the number of shipments, and the financial condition of the petitionee, whereupon such report was offered in evidence for use "in connection with the witness' testimony on these various subjects, and to prove the matters therein recited," and was admitted subject to the following objection: "I object to the offer of this report if it is going to be used in connection with the witness' testimony. The testimony must come before the Commission as testimony, as such, and not simply a report." Counsel are not agreed as to the scope of this objection. Petitionee claims that it merely raises the question of the admissibility of the report for use in connection with the witness' testimony, while petitioners insist that it also raises the question of its admissibility as independent evidence. Whichever is right about this, the first two pages of the report, which are the only part thereof to which petitioners call attention as being prejudicial to them, were clearly inadmissible. But since the substance of what there appears, which in the main is an explanation of the attached schedules and the reasons for the proposed change in service, was testified to by the witness, without objection, and was undisputed, it is not apparent how the petitioners were harmed by its admission. Its admission was error, but harmless so far as any ground now urged against it is concerned. *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 130 Atl. 758.

[14]    The petitioners saved exceptions to certain of the

findings, which they now rely upon. Whether these require consideration depends upon whether the unchallenged findings are sufficient to support the judgment of the Commission, since if they are it will be affirmed, unless a reversal is required for other reasons. *International Products Co.* v. *Estate of Vail*, 97 Vt. 318, 123 Atl. 194. See, also, *Hall* v. *Windsor Savings Bank*, 97 Vt. 125, 124 Atl. 593; *McClary* v. *Hubbard*, 97 Vt. 222, 122 Atl. 469; *Platt, Admx.* v. *Shields & Conant*, 96 Vt. 257, 119 Atl. 520.

[15]   It appears from the unchallenged findings that the petitionee operated at a loss for the years 1924 and 1925 of $897,062.51 and $822,755.29, respectively; that the purpose of the proposed change is to save the difference in salary between an agent and a caretaker, which is $1,380; that under the proposed change the accounting and clerical work now done at this station will be done by the agent at South Royalton, which is only two miles from this station; that a caretaker will be in charge of the passenger station, and keep it open, warm, and clean; that he will have charge of the freight house, and handle the express if he is approved by the express company; that the same number of trains, both passenger and freight, will stop at this station as stop at the present time; that the only change in passenger service will be that tickets will have to be purchased and baggage checked on the train; that petitionee will continue to load and unload freight at this station side track, and will handle incoming and outgoing shipments in less than carload lots; that forwarding orders on outgoing freight can be mailed or delivered to the agent at South Royalton who will issue bills of lading and give them to the conductor who will check up the freight and receipt for the same, and mail such bills to the consignor or leave them for him with the caretaker; that incoming freight in carload lots will be set out here, and less than carload lots will be unloaded by the trainmen into the freight house, after which the same will be at the risk of the consignee. It further appears that compared with other stations of petitionee having agency service, the total freight and passenger business of this station is exceedingly small; that for the year preceding the hearing the total amount of freight received and forwarded here was 1,692 tons, made up of 1,134 shipments received and 267 shipments forwarded; that during that time the carload shipments received averaged one in ten days and like shipments

forwarded averaged the same; that less than carload shipments received averaged three per day, and like shipments forwarded averaged three in five days; that the total number of tickets sold was 844. It is also found that the proposed change will undoubtedly inconvenience people using this station as a shipping and receiving point of freight; that the most serious result attending the change will be the fact that less than carload lots of freight left at the station for shipment will be at the shipper's instead of the carrier's risk until loaded onto the cars, and incoming freight in less than carload lots will be at the consignee's instead of the carrier's risk after delivered at the station. The findings close with these words: "On all the evidence presented we are of the opinion that the petitionee, the Central Vermont Railway Company, is warranted in discontinuing the service of its agent at the Royalton station and in substituting therefor the services of a caretaker."

Other findings aside, we think those recited sufficient to sustain the order of the Commission.

[16, 17] The kind of service which the patrons of this or any other station are entitled to receive does not depend alone upon the convenience of such patrons, or the fact that such station is self-supporting financially, as is claimed to be the fact in the instant case, although these, of course, are important factors for consideration. But of equal importance in determining this question is the volume of business done at such station, its proximity to other stations, the accessibility of the latter, the cost of furnishing such service, etc. With due regard for the inconvenience to which the patrons of this station will be subjected by the proposed change we think the situation as a whole, as presented by the unchallenged findings, justifies the result reached by the Commission. In arriving at this conclusion we are not unmindful of the fact that petitionee is a public service corporation, and that as such it is subject to certain common law and statutory regulations and limitations in the conduct of its business; but we are not aware of any requirement, either common law or statutory that is violated by the proposed change, in view of the circumstances presented. *State* v. *Central Vermont Ry. Co.*, 81 Vt. 463, 71 Atl. 194, 130 A. S. R. 1065, and cases there collected, although dealing with the subject of rates, are instructive as to the scope and meaning of the provision of G. L. 5231 respecting reasonable and equal benefits, facilities and

accommodations for transportation, etc. In *State* v. *Central Vermont Ry. Co.,* it is said that this statute must be construed so as to give effect to the word "reasonable" as well as to the word "equal," if possible. In *McDuffee* v. *Portland & Rochester R. R. Co.,* 52 N. H. 430, 13 A. R. 72, where a statute essentially like ours was under consideration, it is said: "The common and equal right is to reasonable transportation service for a reasonable compensation. Neither the service nor the price is necessarily unreasonable because it is unequal, in a certain narrow, strict, and literal sense; but it is not a reasonable service, or a reasonable price, which is unreasonably unequal." In *Concord & Portsmouth R.* v. *Forsaith,* 59 N. H. 122, 47 A. S. R. 181, it is said concerning the same statute: "Taken together, it is plain that no arbitrary rule of absolute equality, but one of reasonable and just equality, was intended." We entertain no doubt that such is the meaning of the equality provision of G. L. 5231, that the equality here contemplated is a reasonable and just, rather than an absolute, equality. Obviously what would be reasonable and just facilities and accommodations for places doing an exceedingly small amount of business might not, and probably would not, be for places doing a large volume of business; and it is not reasonable to suppose that the Legislature intended that places of the former class should have precisely the same kind of facilities, etc., furnished places of the latter class. We think the statute means no more than that each class shall be furnished such facilities and accommodations as the amount and character of its business reasonably and justly demand. This constitutes reasonable equality within the meaning of the statute. Any other construction would result in unreasonable inequality.

What has been said respecting G. L. 5231 is equally applicable to the provisions of G. L. 5050, subdivision IX.

Although unnecessary to do so since the findings not excepted to sustain the order, we will notice two exceptions to the findings which petitioners appear to regard of unusual importance.

An exception was saved to the statement in the findings that it was impossible to find from the evidence whether or not this agency was self-supporting on its own revenues, on the ground that the evidence fairly and reasonably tended to show that it was self-supporting. Suffice it to say that the affirmative evidence on this issue is not so convincing that this statement can

be said to be unwarranted.    Furthermore, such a finding had it been made would not change the result, in view of the other findings.

[18]    The petitioners excepted to the statement in the findings that in the opinion of the Commission the curtailment of petitionee's liability as bailee of less than car lots of freight did not amount to a substantial reduction of accommodations furnished, etc., within the purview of G. L. 5215, as being impertinent to any issue in the case.    The only fault now found with this statement is that, in effect, it amounts to a holding by the Commission that inasmuch as the curtailment of petitionee's liability as bailee did not infringe the requirements of G. L. 5215 that circumstances ceased to be of consequence, and therefore that it was not given the importance to which it was entitled.    Such conclusion is not justified.    The assumption is that the Commission made proper use of the evidence before it for all legitimate purposes, and this mere statement does not warrant an inference to the contrary.

[19]    Petitioners saved some exceptions to the failure of the Commission to make certain findings, but since the record fails to show any requests for findings such exceptions are overruled.    *Gray et al.* v. *Brattleboro Trust Co.,* 97 Vt. 274, 122 Atl. 670.

*Order affirmed.    Let the result be certified to the Public Service Commission.*