STATE *v.* VALENTI KEMPESTI.

May Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed October 1, 1929.

*Novak, Bloomer & Spero* for the respondent.

*Lawrence C. Jones,* State's attorney, for the State.

WATSON, C. J. Located adjacent to respondent's said dwelling house, was a shoe shop in which he worked. In the daytime of the 5th of September, 1928, Almo B. Franzoni, a deputy sheriff in and for Rutland County, armed with a search warrant for such purpose, and accompanied by one Willis, also a deputy sheriff of said county, and by one Mack, a United States prohibition agent, searched said house for intoxicating liquor. At the time of the search, respondent was not present in the house. He was working in the shoe shop, and there was no direct evidence in the case that he then knew the search was being made. After the search was completed, the officers went to the shop and arrested the respondent.

The testimony on the part of the State, given by the three officers, tended to show that by authority of a search warrant (properly issued) they went to the side door of respondent's house and, finding the screen door locked and the wooden door part way open, they told Mrs. Kempesti (the wife of the respondent) who with their daughter, Felicia Kempesti, eleven years old, was in the house just through the side door, that they were officers and had a search warrant for the house; that when

this was thus made known to Mrs. Kempesti, she said something to the girl, which the officer could not understand, and the girl started to run through the dining room toward the bathroom, and Mrs. Kempesti shut and locked the inside door and followed the girl, disappearing from sight of the officers; that after being gone "just for a minute," Mrs. Kempesti came back and unlocked the door; that the officers then went into the house and directly to the bathroom; that on getting to the bathroom they found the door thereto locked, but heard something inside the bathroom like running water, and like the pouring of something from one basin into another; that "after a minute" the same girl unlocked the door, she being inside of bathroom, and the three officers went in; that each of the three officers detected the smell of alcohol in the bathroom and they looked about to see if they could find it. In that room they found a porcelain kettle, a funnel, one-half pint bottle, and a cedar oil can; that in the toilet bowl there was liquid which had odor of cedar oil and alcohol, and the contents of the toilet bowl were mopped up and placed in a bottle; in which bottle said contents were then by Officer Franzoni turned over to the State's attorney, and by the latter expressed to the State Laboratory of Hygiene for analysis, and as such it was introduced in evidence as an exhibit in the case; that Dr. Whitney, in charge af the State Laboratory, testified to receiving from the State's attorney, said bottle of contents for analysis, and produced the same in court in connection with his testimony; that as a result of such analysis he found said contents to contain thirty-nine per cent. by volume at sixty degrees Fahrenheit, of ethyl (grain) alcohol; that ethyl alcohol may be used for beverage purposes; that he tested said contents for denaturants, but found none except cedar oil; that before cedar oil was added to the alcohol as shown by the analysis, the alcohol was fit for beverage purposes. As the case stood on the evidence, it was for the jury to say whether at the time said officers went there to make such search on the occasion in question, and before the oil of cedar was then put with it, if it was so done as the State's evidence tended to show, liquor possessed at respondent's house was intoxicating liquor fit for beverage purposes. *State* v. *Baranski*, 127 Me. 488, 144 Atl. 400.

The next claim of the defense is that the liquor then seized was not in the possession of the respondent.

In addition to the foregoing, the uncontradicted evidence introduced by the prosecution tended to show that the respondent and his said wife had been for more than one and a half years and then were living together in the house searched at the time in question; that respondent slept there the night before the search, and ate his breakfast there that morning.

■ ■ We held in *State* v. *Dropolski,* 100 Vt. 259, 136 Atl. 835, that where liquor is found in a house over which respondent had control it creates a rebuttable presumption that the possession was his; that where husband and wife reside together there is a like presumption that the intoxicating liquor in the house belongs to the husband, and where the joint possession is that of husband and wife, the presumption of ownership is in favor of the husband. In addition to these presumptions, was the further testimony of Officer Franzoni that on a prior occasion, about one and a half years before the trial of this case, he went with one Dugan, a United States deputy marshal, twice to the respondent's said house; that on one of these occasions Mr. Kempesti was there—Dugan had a warrant for him and wanted the assistance of Franzoni; that on that occasion the two officers went to the side door, found it locked, and were not let in for a few seconds or few minutes; that when they finally went in the girl or her mother ran to the bathroom; that the two officers went to the bathroom to see if Mr. Kempesti was in there, thought he was locked in there, but when the door was opened he was not in there, "he came walking in from the other room"; that when the officers went into the bathroom on that occasion, they detected the odor of alcohol.

■ One Gilligan, called as a witness by the State, testified that he had always lived in West Rutland, was acquainted with both Mrs. Kempesti and her husband, the respondent, knew where they lived, had been several times in their house, also several times in his shoe shop which stands next to the house; that within the year last before the trial of this case, he bought alcohol there, at times of Mr. Kempesti, and at times of Mrs. Kempesti, different times of them both; that when the witness made these purchases, he went into the kitchen. "Q. Where would Kempesti go when he got the alcohol he sold you? A. In what I would call the dining room. Q. Where would Mrs. Kempesti go when you bought from her? A. Same place. Q. The little girl there on those occasions? A. At times she

would be there.'' The witness further testified that he had purchased alcohol from Kempesti on occasions when he went into Kempesti's shoe shop within the last year; that on those occasions when the witness bought alcohol of Kempesti in the shop, the latter went out of the shop toward the house and would have the alcohol when he came back, in a half-pint or pint bottle, according to the amount purchased; that he paid Kempesti for whatever alcohol he bought on each of those occasions. This testimony given by the last witness, though received subject to respondent's objection as immaterial, irrelevant, incompetent, and not within the issues of this case, had a legal tendency to show respondent's relation to the house, and to the possession and sale of the intoxicating liquor therein possessed and handled or sold either by the respondent or his wife to be as were the presumptions stated above, and there was no error in admitting the evidence. *State* v. *Kamuda,* 98 Vt. 466, 129 Atl. 306. Evidence of what took place at respondent's house when visited by the United States deputy marshal accompanied by deputy sheriff Franzoni, one and a half years before the trial of the case at bar, as given by the latter, was properly received as having a like tendency. This and also the sales of alcohol at that place, both in the house and in the shop, as testified by the witness Gilligan, further tended to characterize the place as one where the business of keeping and selling intoxicating liquor for beverage purposes was carried on by the respondent. *State* v. *Watson,* 99 Vt. 473, 134 Atl. 585. The question as to whether the respondent had the possession was for the jury. *State* v. *Arrigoni,* 119 Wash. 358, 205 Pac. 7, 27 A. L. R. 310.

The liberal construction required by section 4 of the 1921 statute, to be given to all the provisions of the act, to the end named, is in derogation of the strict rules of the common law generally exacted from public authorities in the enforcement of criminal law, for the less precise, usually applied in civil matters. *Allen* v. *State,* 183 Wis. 323, 197 N. W. 808, 39 A. L. R. 782.

The presumptions and evidence being that the intoxicating liquor found during the search, was owned by, and in the possession of, the respondent in his house occupied by himself and wife together as their common residence over which he had control, the acts and conduct of the wife when handling the liquor or in connection therewith, whether in his presence

or in his absence, as the State's evidence tended to show, were such that in the circumstances the jury might fairly and reasonably infer that her acts and conduct in respect thereto were as his agent, for which he was criminally responsible under the law. In *State* v. *Legendre,* 89 Vt. 526, 96 Atl. 9, 10, in which the respondent was charged with the unlawful sale and furnishing of intoxicating liquor, one question urged by the State was that the sale was by the agent or servant of the respondent, and for which the latter was criminally responsible. ''The authority of an agent may be by parol and collected from the circumstances * * * Agency may be presumed from the conduct of the parties * * * The authority of an agent may be implied from a single transaction * * * Agency need not be proved as an independent fact, but it may be inferred from a variety of facts; and, although the testimony as to the fact of agency may not be full and satisfactory, yet, if it fairly tends to prove the existence of that relation, it should be submitted to the jury.''

On this question the Kamuda Case is much in point. It there appeared that the manual act of selling and delivering the intoxicating liquor to the person named in the complaint, was done by Mrs. Kamuda, respondent's wife, in the grocery store and home premises occupied by the Kamudas and their family. The State claimed that in making the sale of liquor Mrs. Kamuda was the agent of her husband. The latter denied her agency in this respect, but did not testify. His only witness in defense was his wife, and she too denied such agency. The existence thereof was a vital question in the State's case. We there said in effect that from the facts and circumstances in the case, including the relationship of husband and wife, it could fairly and reasonably be inferred that whenever the wife, in the performance of the husband's store business, sold and delivered to customers goods kept by him for sale in carrying on such business, ''she was acting under an implied agency from him, and a jury might well find that she made such sales by his authority, assent, or approval * * * *Such criminal acts of the wife would more readily be supposed to have been with the respondent's knowledge and authority than would those of a stranger.''

After the jury had deliberated upon the case for a time without arriving upon a verdict, they returned into court, the foreman stating to the court that ''the jurors want to know

if this man had alcohol in his possession if he had any right to have it under any consideration."

Thereupon, the court further charged as follows: "As far as the evidence is concerned in this case, he had not. The law provides that a person shall not possess intoxicating liquor. Now seeing the presumption is if a man does possess intoxicating liquor, to show he does possess intoxicating liquor that is a violation of the law. Now there are certain instances, for instance like where he might get a prescription filled by a doctor, but you will see for instance if you show the man had intoxicating liquor and he claimed he had a right to have it by getting a prescription, it rests with him to show that. In this case where there has nothing been shown, defendant has not shown that, if you find that intoxicating liquor was there and it was in the possession of the defendant, then the verdict will be guilty, because respondent here has not shown from the evidence, if you find he had alcohol, that he came lawfully by it."

Respondent took "an exception to the further instruction with reference to the question by the jurymen and, among other things, that still leaves out of the consideration of the jury the fact that it may not be something that is fit for beverage purposes, may be some such thing as alco-rub or a dozen other things that contain alcohol but is not a violation of the law."

The basis of this exception, as given, is altogether too broad. It is outside the case. There was no evidence introduced regarding "alco-rub," nor the "dozen other things" (whatever they were) had in mind by respondent's attorney in saving the exception. None of them were within the proper knowledge of the jurors, having the case in hand. Whether within the personal knowledge of any of them, is not considered.

*Judgment that there was no error in the proceedings and respondent takes nothing by his exceptions. Let execution be done.*